**ACOLYTE ELECTRIC CORPORATION, Plaintiff,**

v.

**The CITY OF NEW YORK, et al, Defendants.**

Misc. No. 86–0329.

United States Bankruptcy Court, E.D. New York.

Dec. 9, 1986.

Pinks, Brooks Stern & Arbeit, Steven G. Pinks, Hauppauge, N.Y., for debtor.

McGoey & Martirano, New Rochelle, N.Y., special counsel to debtor.

Frederick A.O. Schwarz, Jr., Corp. Counsel, City of New York, Fred B. Ringel, Asst. Corp. Counsel, New York City, for defendants.

MARVIN A. HOLLAND, Bankruptcy Judge:

This report responds to two orders issued by the Honorable Jack B. Weinstein which deal with the motion of the defendants a) pursuant to 28 U.S.C. § 157(d) to withdraw the reference and, in effect, remove this adversary proceeding to the district court; and b) for abstention pursuant to 28 U.S.C. § 1334.

The first such order, dated August 8, 1986, refers to the undersigned for a determination of the following:

(a) Is the instant action a core proceeding, to wit, one in which the Bankruptcy Judge may hear and enter final orders pursuant to 28 U.S.C. § 157(b)(1), or, in the alternative, is the proceeding a non-core proceeding, to wit, one in which the Bankruptcy Judge may only submit proposed findings of facts and conclusions of law to the District Court?

(b) Under 28 U.S.C. § 1334, is the within action one in which the court must mandatorily abstain or is the matter one in which the court may under its own discretion abstain?

(c) In the event discretionary abstention is applicable, will the Bankruptcy Court abstain from hearing the within proceeding?

The second order, dated August 11, 1986, refers to the undersigned for recommendation of the following:

(a) Is the bankruptcy court constitutionally and statutorily empowered to conduct a jury trial in this proceeding in accordance with the City's demand therefore made on July 28, 1986?

Appendix 1 contains a copy of each of these orders.

## THE FACTS

### The Parties

Plaintiff/Debtor, Acolyte Electric Corporation ("Acolyte"), a New York corporation, maintains its principal place of business in Long Island City. During the period encompassed by the plaintiff's complaint, the defendants, Ameruso and Lipke, served as Commissioners of the New York City's Departments of Transportation and General Services, respectively.

### The Pending State Court Action

On February 14, 1986, Acolyte commenced an action in the Supreme Court of New York County against the defendants herein for money damages for breach of contract.

### The Bankruptcy Court Proceedings

On April 18, 1986, Acolyte filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, and was thereafter continued in the management and control of its business and properties as a debtor-in-possession pursuant to 11 U.S.C. § 1107.

On June 9, 1986, the debtor-in-possession filed this adversary proceeding with the Clerk of the Bankruptcy Court of the Eastern District of New York. A summons, pretrial notice and complaint were then duly served on the defendants. Copy of the complaint is included as Appendix 2.

The plaintiff alleges that on or around June 13, 1983 it contracted with the defendants to furnish labor, materials, tools and any equipment needed for the maintenance of illuminated traffic signals in the boroughs of The Bronx and Queens. Acolyte claims that although it performed all of the services required under this contract in a competent and workmanlike manner and fully complied with all of its provisions, the defendants "willfully, wrongfully, arbitrarily and capriciously" breached the contract and refused to fully compensate the plaintiff for the services rendered pursuant to the contract. Acolyte alleges numerous fruitless demands for its monies, and compliance with all statutory prerequisites to a suit against the municipality.

In its second cause of action, Acolyte contends that the defendants made certain unilateral changes in the contract requiring Acolyte to perform services not originally agreed upon. Acolyte claims that although it did indeed perform this additional work, it has not been duly compensated.

In its third cause of action, the plaintiff alleges a provision in the contract subjecting it to liability under a liquidated damage clause in the event of a failure to report to a specified job site upon notification that illuminated traffic control devices were in need of maintenance or repair. Acolyte

contends that its entering into this contract was conditioned upon the following: (1) that the defendants would make available the materials needed to repair or replace the traffic control devices; (2) that such materials, as well as other important equipment, would be kept in good working condition by defendants; (3) that the telephone lines and computers be maintained in good working condition; (4) that the City's Inspector, and other official agencies, would properly report that illuminated traffic control devices, controllers, detectors, sensors, or their supports, have been damaged or defective or out of time; (5) that plaintiff would be notified of such problems at the time the call was received; (6) that temporary repairs by Acolyte would stop the time in which liquidated damages would be assessed; and that (7) defendants, as well as other City contractors, would properly perform work under their contracts and not interfere with plaintiff's performance of its contractual obligations.

Acolyte alleges that when it received notifications that traffic control devices had problems and needed repair, the defendant failed to provide it with the materials necessary to make such repairs for a lengthy period of time. In addition, it is alleged that the equipment which was made available to Acolyte was not in good working condition, and that any calls made to Acolyte were not properly recorded, screened or investigated. As a result of the foregoing, Acolyte contends that it was "wrongfully hindered, delayed and interfered with" in the performance of its work under the contract as a result of the defendants' failure to perform their contractual obligations.

Acolyte's fourth to eleventh causes of action are similar to the first three in claiming damages sustained from the defendants' alleged breach of contract and interference with its ability to timely perform under the contract. In its twelfth cause of action, the plaintiff claims that on September 24, 1985 it entered into a contract with the defendants in which it agreed to furnish and install labor and materials necessary and required in maintaining the street lighting system for the illumination of roads, parks and public places in the borough of Brooklyn. It is further alleged that although the plaintiff fully performed the duties required under the contract, the defendants wrongfully deducted $4,062.50 from the amount due plaintiff pursuant to a liquidated damages clause.

The defendants rebut Acolyte's complaint by asserting numerous affirmative defenses which state in substance that since Acolyte failed to comply with various provisions of the contract governing the procedure by which it was to notify the defendants of the claims set forth in the complaint, this action cannot be maintained. In addition, the defendants also contend that the complaint fails to state grounds upon which relief can be granted, and that this court lacks subject matter jurisdiction over the action.

On July 21, 1986, the defendants made a motion in the United States District Court of the Eastern District before the Honorable Jack Weinstein seeking an Order withdrawing the reference of this matter to the Bankruptcy Court of the Eastern District pursuant to 28 U.S.C. § 157(d) and for an Order requesting that the District Court enter its Order of Abstention pursuant to 28 U.S.C. § 1334(c). The defendants also requested an Order staying the proceedings before the Bankruptcy Court until a determination of this District Court motion could be made.

On July 28, 1986, the defendants filed a demand for a jury trial in this matter.

Judge Weinstein granted plaintiff's motion to the extent that the issues present were referred to this court as set forth above.

## DISCUSSION

*Historical Overview*

The Bankruptcy Reform Act of 1978 conferred bankruptcy jurisdiction in 28 U.S.C. § 1471 as follows:

    (a) Except as provided in subsection (b) of this section, the district courts

shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

(d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all the property, wherever located, of the debtor, as of the commencement of such case.

The 1978 Act set forth the creation and composition of the bankruptcy court in 28 U.S.C. § 151 which stated:

(a) There shall be in each judicial district, as an adjunct to the district court for such district, a bankruptcy court which shall be a court of record known as the United States Bankruptcy Court for the district.

(b) Each bankruptcy court shall consist of the bankruptcy judge or judges for the district in regular active service. Justices or judges designated and assigned shall be competent to sit as judges of the bankruptcy court.

(c) Except as otherwise provided by law, or rule or order of court, the judicial power of a bankruptcy court with respect to any action, suit or proceeding may be exercised by a single bankruptcy judge, who may preside alone and hold a regular·or special session of court at the same time other sessions are held by other bankruptcy judges.

Congress then gave the bankruptcy courts sweeping powers of a court of equity, law or admiralty, limited only by the provision that the bankruptcy court could not "enjoin another court or punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment." 28 U.S.C. § 1481. This broad judicial jurisdictional grant was intended to enable the bankruptcy court to "hear contract and other disputes between the debtor and other parties that would otherwise have been resolved in a state or federal district court in the absence of bankruptcy, because the dispute became 'related to' a bankruptcy case upon the filing of the bankruptcy petition by one of the parties." Weintraub & Resnick, *Bankruptcy Law Manual* ¶ 6.02 at 6–5. In addition, the bankruptcy judge was given the authority to conduct jurytrials pursuant to 28 U.S.C. § 1480.

After a five-year transition period (from October 1, 1979, the effective date of the Act) there was to be a new bankruptcy court as an adjunct of the United States District Court. Judges of the new bankruptcy court would be appointed by the President with the consent of the Senate, but would serve only for a fourteen-year term.

### THE *MARATHON* DECISION

The Bankruptcy Reform Act's expansive delegation of Article III jurisdiction to non-tenured bankruptcy judges was held unconstitutional in *Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). [hereinafter cited as *Marathon* ].

In *Marathon*, the debtor had brought an action in the bankruptcy court seeking damages for alleged breaches of contract and warranty, as well as misrepresentation, coercion and duress. The defendants sought dismissal on the grounds that the Code unconstitutionally conferred Article III powers upon judges lacking presidential appointment and life tenure. *Id.* at 56, 102

S.Ct. at 2863. The bankruptcy court denied the defendants' motion to dismiss, *Northern Pipeline Constr. Co. v. Marathon Pipeline Co. (In re Northern Pipeline Construction Co.)*, 6 B.R. 928 (Bkrtcy D.Minn.1980); the district court reversed, holding 28 U.S.C. § 1471 to be an unconstitutional grant of Article III judicial powers to a non-tenured Article I court. *Northern Pipeline Construction Co. v. Marathon Pipeline Co. (In re Northern Pipeline Construction Co.)*, 12 B.R. 946, 956 (D.Minn.1981); and the Supreme Court, in a landmark decision, affirmed the district court.

Justice Brennan began his plurality opinion [1] by stating that Article III is an essential ingredient of our constitutional system of checks and balances because it both defines the power and maintains the independence of the judiciary. "The inexorable command of [Article III, Section 1] is clear and definite: The judicial power of the United States must be exercised by courts having the attributes prescribed in Article III." *Marathon*, 458 U.S. at 58–59, 102 S.Ct. at 2864–65. After stating that bankruptcy judges were clearly not Article III judges, the plurality discussed the extent to which the Bankruptcy Act of 1978 violated the requirements of Article III that the judicial power of the United States be vested in courts whose judges enjoy the tenure therein provided. *Id.* at 62, 102 S.Ct. at 2866.

The appellant had made two arguments in support of the 1978 Act. First, it had argued that under Article I Congress may establish legislative courts which possess the jurisdiction to decide cases normally adjudicated by Article III judges. *Id.*, (citing brief for United States at 9). In responding to this argument, the Court cited those rare instances in which Article III did not bar the creation of legislative courts, but nonetheless held that "Article III bars Congress from establishing legislative courts to exercise jurisdiction over all matters related to those arising under bank-

ruptcy laws. The establishment of such courts does not fall within any of the historically recognized situations in which the general principle of independent adjudication commanded by Article III does not apply." *Id.* at 76, 102 S.Ct. at 2874.

The appellants had further argued that even if the constitution required a bankruptcy-related proceeding to be heard only by an Article III court, a bankruptcy court met this requirement since it was merely an adjunct of the district court. *Id.* at 76–77, 102 S.Ct. at 2874. In making this argument the appellants relied principally upon *Crowel v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) and *U.S. v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) where the Supreme Court had approved the utilization of administrative agencies as adjuncts to Article III courts. *Marathon*, 458 U.S. at 77, 102 S.Ct. at 2874 (citing brief for the United States at 40–42). The Supreme Court disposed of this argument by pointing out that under the 1978 Act, the bankruptcy court has the power to hear "all civil proceedings arising under title 11 or arising in or related to cases under title 11," 28 U.S.C. § 1471(b) (1976 Ed.Supp. IV), preside over jury trials (§ 1480), issue declaratory judgments (§ 2201), issue writs of habeas corpus (§ 2256), and issue any order, process, or judgment appropriate to the enforcement of the provisions of Title 11, 11 U.S.C. § 105(a) (1976 Ed.Supp. IV). The Court stated that "the 'adjunct' bankruptcy courts created by the Act exercise jurisdiction behind the facade of a grant to the district courts, and of exercising powers far greater than those lodged in the adjuncts approved in either *Crowel* or *Raddatz.*" *Marathon*, 458 U.S. at 85–86, 102 S.Ct. at 2878–79. Justice Brennan then concluded that the grant of jurisdiction to the bankruptcy court embodied in 28 U.S.C. § 1471 was unconstitutional. *Marathon*, 458 U.S. at 87, 102 S.Ct. at 2880.

---

1. Justice Brennan delivered the plurality opinion in which he was joined by Justices Marshall, Blackmun and Stevens. Justices Rehnquist and O'Connor issued a concurring opinion.

## THE PRESENT BANKRUPTCY COURT SYSTEM

In an attempt to resolve the post *Marathon* confusion as to structure and authority of the bankruptcy courts, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"). Under BAFJA, jurisdiction over cases involving Title 11 is conferred upon the district courts, as it had been under Section 1471 of the 1978 Act. However, there is no longer any provision analogous to former Section 1471(c) which authorized the bankruptcy court to exercise "all" such jurisdiction. Rather, BAFJA enacted 28 U.S.C. § 157 which covers the referral of cases.

## REFERRAL OF CASES

Commentators Benjamin Weintraub and Alan Resnick eloquently summarized the operation of § 157 in the following passage contained in their treatise:

In general, district courts routinely refer bankruptcy cases and related proceedings to the bankruptcy court within its judicial district. When a proceeding is referred by the district court to the bankruptcy court, the role of the bankruptcy judge depends on whether the matter is a "core proceeding" or a "non-core proceeding." If a matter is a core proceeding, the bankruptcy judge may hear and determine the issues and may enter appropriate orders and judgments subject to traditional appellate review.

The 1984 Amendments define the term "core proceeding" by setting forth the following nonexclusive list of matters that arise often in a bankruptcy case ... If there is uncertainty or a dispute regarding the classification of a matter as either a core or non-core proceeding, the bankruptcy judge must determine the appropriate classification. Such a determination may be made sua sponte or on motion of a party. The 1984 Amendments make it clear that a matter shall not be deemed a non-core proceeding solely because its resolution may be affected by state law.

A non-core proceeding that is otherwise related to a bankruptcy case may be heard by a bankruptcy judge nonetheless. If the district court and all the parties to the non-core proceeding consent, the bankruptcy judge may determine the matter and enter appropriate orders and judgments as if it is a core proceeding. However, if the non-core proceeding is referred to the bankruptcy court without such consent to make final determinations, the bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court. Only the district judge may enter final orders and judgments in such situations. The district judge considers the bankruptcy judge's proposed findings and conclusions but is required to review de novo those matters to which any party has timely and specifically objected....

[T]he district court is required to withdraw a core or non-core proceeding upon a timely motion by any party if the resolution of the matter requires consideration of both the Bankruptcy Code and another law of the United States regulating organization or activities affecting interstate commerce. B. Weintraub & A. Resnick, Bankruptcy Law Manual 6–15—6–20.[2]

28 U.S.C. § 157 is entitled PROCEDURES. Subsection (a) authorizes the district court to refer to the bankruptcy court any or all cases under title 11 (cases filed under a chapter of the Bankruptcy Code) and any or all proceedings arising under

---

**2.** It is important to note that a proceeding can be both "noncore" and not "related to" the bankruptcy case. In this situation withdrawal of reference is clearly warranted since the bankruptcy court does not have the authority to even issue proposed findings of fact or conclusions of law. For an example of cases in which the court held that a proceeding was neither "core" nor "related" *see First Nat. Bank of Geneva v.* *Biallas (In Re Denalco),* 57 B.R. 392 (N.D.Ill. 1986); *Gennari v. U.S. Dept. of the Treasury (In Re Educators Investment Corp.),* 59 B.R. 910 (Bkrtcy.D.Nev.1986); *In Re Murchison,* 54 B.R. 721 (Bkrtcy.N.D.Tex.1985); *In Re Ennis,* 50 B.R. 119 (Bkrtcy.D.Nev.1985); *U.S. v. Farmers State Bank of Leed, North Dakota (In Re Alexander),* 49 B.R. 733 (Bkrtcy.D.N.D.1985).

title 11 or arising in or related to a case under title 11. This has been accomplished in this district by the District Court's Order of Referral, a copy of which is set forth in Appendix 3, together with the full text of § 157.[3]

Section 157(b)(1) gives bankruptcy judges the jurisdiction to hear and determine all cases under title 11 and all core proceedings (nonexclusively enumerated in subsection (2)) arising under title 11 or arising in a case under title 11 which have been referred pursuant to subsection (a) and authorizes them to enter appropriate judgments and orders.

Section 157(c)(1) authorizes a bankruptcy judge to hear non-core proceedings but requires the submission of proposed findings and conclusions to the district court for entry after de novo review of matters objected to. § 157(c)(2) authorizes the district court, with the consent of all parties, to refer a related proceeding to a bankruptcy judge to hear and determine. Every reported case has assumed that blanket orders of reference, such as exist in this district, which are issued prior to the inception of a particular case, and therefore prior to any manifestation of the intention required by the statute, are sufficient to fulfill the statutory requirement. However, the unambiguous wording of § 157(c)(2) that "the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments ..." appears to require that the party's consent be manifested prior to, or at least simultaneous with, the district court reference. Thus, although not considered in any reported case of which we are aware, blanket orders of reference followed by the consent of the parties manifested in the bankruptcy court would appear to fall short of the statutory requirement and therefore leave the jurisdiction of the bankruptcy court in such instances to hear any "related to" case in serious question. Fortunately, none of the parties in *Acolyte* has raised this issue.

Section 157(d) authorizes the district court to withdraw the reference "for cause shown" and requires such withdrawal where resolution of the proceeding requires consideration of both title 11 "and other laws of the United States regulating organizations or activities affecting interstate commerce." It is important to note that proceedings "related to a case under title 11" which are referred to a bankruptcy court by Section 157(a) are not considered Section 157(b) core proceedings. "This is so because the constitutional ability of bankruptcy judges to hear such matters was found lacking in *Marathon*. There is no such thing as a core matter which is merely 'related to' cases under title 11." 1 *Collier on Bankruptcy* ¶ 3.01 at 3–26 (15th Ed.1985).

Under BAFJA, then, all bankruptcy jurisdiction is given in the first instance to the district court. Of the three types of proceedings, bankruptcy cases (cases seeking relief under title 11), core proceedings (proceedings within bankruptcy cases which seek the creation, recognition, determination, or adjudication of rights which do not exist independent of title 11 or the bankruptcy case) and related proceedings (proceedings which could have been brought in state court had there been no title 11 bankruptcy case filed) subject only to proper order of reference from the district court, the bankruptcy court may hear and determine the first two in all instances; it may hear and report in the latter, although consent of the parties will permit it to hear and determine.

Recognizing that bankruptcy cases and core proceedings involve congressionally created rights and that related proceedings involve state law or common law rights, this structure falls within the framework enunciated by the Supreme Court in *Marathon* as follows:

> Private-rights disputes ... lie at the core of the historically recognized judi-

---

**3.** This Order was given effect, *nunc pro tunc*, as of July 10, 1984.

cial power.... But when Congress creates a statutory right, it clearly has the discretion, in defining that right, to create presumptions, or assign burdens of proof, or prescribe remedies; it may also provide that persons seeking to vindicate that right must do so before particularized tribunals created to perform the specialized adjudicatative tasks related to that right. Such provisions do, in a sense, affect the exercise of judicial power, but they are also incidental to Congress' power to define the right that it has created. No comparable justification exists, however, when the right being adjudicated is not of congressional creation. In such a situation, substantial inroads into functions that have traditionally been performed by the judiciary cannot be characterized merely as incidental extensions of Congress' power to define rights that it has created. Rather, such inroads suggest unwarranted encroachments upon the judicial power of the United States, which our Constitution reserves for Art. III courts. *Id.* at 70–84, 102 S.Ct. at 2871–78 [Footnote omitted].

As indicated earlier, Section 157(c)(2) does not state whether such consent must be expressed or whether it may be implied from the parties actions or inactions. When faced with this question, courts have not all reached the same conclusion.

In *Piombo Corp. v. Castlerock Properties (In re Castlerock Properties)*, 781 F.2d 159 (9th Cir.1986), a creditor filed a motion for relief from the automatic stay and the debtor proceeded to file an answer incorporating state law contract counterclaims against the creditor. The creditor then filed an answer to the counterclaims as well as a proof of claim. The Court held that the creditor's filing of this proof of claim did not constitute implied consent to the bankruptcy court's exercise of jurisdiction over the related counterclaims. *Id.* at 161–162.

The District Court in *Interconnect Telephone Services Inc. v. Farren*, 59 B.R. 397 (S.D.N.Y.1986) held that defendant's employees did not implicitly consent to bankruptcy court jurisdiction in a non-core proceeding brought by the debtor-in-possession, because discovery was conducted and a motion to dismiss the debtor's complaint was made while the action was still pending in the bankruptcy court. Similarly, the district court in *K–Rom Construction Corp. v. Behling (In Re K–Rom Construction Corp.)*, 46 B.R. 745 (S.D.N.Y.1985) held that parties could consent to having the bankruptcy court issue a final order in a "related" proceeding as long as such consent was "validly placed on the record in the bankruptcy court when [the] non-core case was commenced." *Id.* at 750. In contrast, the district court in *Jefferson National Bank v. I.A. Durbin, Inc. (In Re I.A. Burdin, Inc.)*, 62 B.R. 139 (S.D.Fla. 2986) held that a party implicitly consented to bankruptcy court jurisdiction over her counterclaim by initially joining in debtor's counterclaim and then waiting until five months after joinder to file a non-consent notice. *Id.* at 144.

The district court in *Doyle v. Paolino (In Re Energy Saving Center Inc.)*, 54 B.R. 100 (Bkrtcy.E.D.Pa.1985) held that parties in a "related proceeding", by failing to object to bankruptcy court's jurisdiction, are deemed to having consented to such jurisdiction. *Id.* at 102. The district court in *Rainey v. International Harvester Credit Corp.*, 59 B.R. 987 (N.D.Ill.1986) stated that by filing a complaint seeking affirmative relief and by failing to timely move under § 157(b)(3) for a bankruptcy court determination as to whether the matter is core or non-core, plaintiff implicitly consented to the bankruptcy court's jurisdiction. *Id.* at 989–90. Also, the court in *Alloy Metal Wire Works, Inc. v. Associated Screw and Manufacturing Co. (In Re Alloy Metal Wire Works, Inc.)*, 52 B.R. 39 (Bkrtcy.E.D.Pa.1985) held that the parties implicitly consented to the bankruptcy court's exercise of jurisdiction over the debtor's complaint on accounts receivable by failing to timely raise objections to such jurisdiction. *Id.* at 40.

In *Acolyte,* there has been no consent explicit or implicit to bankruptcy court jurisdiction. Consequently, it is unnecessary to determine the extent to which § 157(c)(2) consent can be implied from a litigant's conduct.

## MANDATORY AND PERMISSIVE WITHDRAWAL

Section 157(d) sets forth two alternative grounds for withdrawal by the district court of its reference to the bankruptcy court. The first part of this section permits the district court, on its own motion or on the timely motion of any party, to withdraw in whole or in part any case or proceeding originally referred to the bankruptcy court pursuant to Section 157(a) if sufficient cause is shown: permissive withdrawal. The second sentence of subdivision (d) states that only after an interested party makes a motion, the district court *shall* withdraw a proceeding from the bankruptcy court if it determines that resolution of the matter requires the consideration of both Title 11 and some other body of federal law regulating organizations or activities affecting interstate commerce: mandatory withdrawal.

Mandatory withdrawal will not be required "simply whenever non-Code federal statutes will be *considered* but rather only when such consideration is necessary for the *resolution* of a case or proceeding." *Tedesco v. Mishkin,* 53 B.R. 120, 123 (S.D. N.Y.1985) (quoting *In Re White Motor Corp.,* 42 B.R. 693, 703–04 (N.D.Ohio 1984)) [Emphasis in original]. To trigger the mandatory withdrawal provision, it must appear that "resolution of the claim will require substantial and material consideration of ... non-Code [federal] statutes." *Id.* at 705. Courts have held that mandatory withdrawal is necessary when the resolution of a proceeding requires consideration of Title 11 and the comprehensive Environmental Response, Compensation and Liability Act, *U.S. v. Johns-Manville Corp. (In Re Johns-Manville Corp.),* 63 B.R. 600 (S.D.N.Y.1986); Title 11 and the Perishable Agricultural Commodities Act, *Block v.*

*Anthony Tamaro, Inc. (In Re Anthony Tamaro, Inc.),* 56 B.R. 999 (D.N.J.1986); Title 11 and the Employee Retirement Income Security Act of 1974, *Levine v. Central State, Southeast and Southwest Areas Pension Fund (In Re Ottawa Cartage, Inc.),* 55 B.R. 371 (N.D.Ill.1985); Title 11 and the Racketeer Influenced and Corrupt Organization Act, *Derryberry v. Toledo Trust Co. (In Re Hartley),* 55 B.R. 781 (Bkrtcy.N.D.Ohio 1985).

It is clear that resolution of the *Acolyte* adversary proceeding will not require any consideration of non-title 11 *federal* law. Therefore, it is only necessary for the district court to consider whether it should exercise its discretion and grant the permissive withdrawal of its reference of this adversary proceeding.

28 U.S.C. § 157(d) permits the district court to withdraw a proceeding referred to a bankruptcy court under § 157(a) "for cause shown." "The contours for the court's exercise of its discretion under § 157(d) are unclear. The Section itself is silent as to what constitutes 'cause' sufficient to warrant discretionary withdrawal and there is, as yet, little case law dealing with the discretionary withdrawal provision of § 157(d). Nor does the legislative history of the enactment shed much light on the subject." *Boatman v. C.V. Industries, Inc.,* 51 B.R. 574, 577–78 (D.Conn.1985).

The district court in *Lesser v. A–Z Associates (In Re Lion Capital Group),* 48 B.R. 329 (S.D.N.Y.1985) (hereinafter cited as *Lion Capital* ) observed that nothing in § 157 indicates that "Congress intended to allow a party to avoid bankruptcy jurisdiction through § 157(d) by asserting that it might invoke the *de novo* proceedings of Section 157(c)(1)." *Id.* at 337. However, it is equally clear that a district court is not absolutely foreclosed from withdrawing its reference of a proceeding to the bankruptcy court whenever a matter is found to be a core proceeding. *Enviro-Scope Corp. v. Westinghouse Electric Corp. (In Re Enviro-Scope Corp.),* 57 B.R. 1005, 1008 (E.D. Pa.1985).

■ The broad language of § 157(d), and previously mentioned case law, indicate that a district court has wide discretion in determining whether there is sufficient "cause" for withdrawal of reference. "One factor in determining to withdraw reference is whether the claim is a core proceeding." *Judge v. Ridley & Schweigert (In Re Leedy Mortg. Co. Inc.)*, 62 B.R. 303 (E.D.Pa.1986). However, in making this determination, the district court is free to consider not only the nature of a particular proceeding, but is also able to examine whether judicial economy may be served by a withdrawal. *Enviro-Scope Corp.*, 57 B.R. at 1008–09.

Sufficient "cause" to justify a withdrawal of reference pursuant to § 157(d) requires considerations of (1) the nature of the proceeding, i.e., whether it is core or related, and (2) judicial economy. The analysis must begin with a determination of whether the adversary proceeding is core or related. Core proceedings naturally include those types of matters which necessarily and directly result from a party's filing of a bankruptcy petition.

Section 157(b)(2) contains the following nonexclusive list of core proceedings: orders regarding the debtor's ability to obtain credit, § 157(b)(2)(D); determinations of the "allowance or disallowance" of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation for estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11, Section 157(b)(2)(B), *In re Evans Products Co.*, 60 B.R. 863, 865 (S.D.Fla.1986) (holding that a proceeding seeking to determine whether the FTC's claim should be allowed is a core proceeding despite the fact that the bankruptcy court would have to construe non-title 11 federal law in making its determination), *Robinson v. Hinkley (In Re Hinkley)*, 58 B.R. 339 (Bkrtcy.S.D.Tex.1986) (holding that claim allowance litigation is a core proceeding); *First State Bank v. Ad-* *visory Information & Mangement Systems, Inc. (In Re Advisory Information & Management Systems, Inc.)*, 50 B.R. 627 (Bkrtcy.M.D.Tenn 1985) (holding that an action in which a secured creditor moved for allowance of an administrative expense based on the depreciation of its collateral between the date the petition was filed and the date the creditor was granted relief from the stay and repossessed his collateral is a core proceeding); "counterclaims by the estate against persons filing claims against the estate." § 157(b)(2)(C), *Jefferson National Bank v. I.A. Durbin, Inc. (In Re I.A. Durbin, Inc.)*, 62 B.R. 139 (S.D.Fla.1986) (holding that debtor's counterclaim against payee of a promissory note was a core proceeding since debtor explicitly admitted in its memorandum that its counterclaim was a core proceeding on the basis of its being a counterclaim against a claim filed against the estate); *Bedford Computer Corp. v. Ginn Publishing, Inc. (In Re Bedford Computer Corp.)*, 61 B.R. 594 (Bkrtcy.N.H.1986) (holding that because a creditor initially filed a proof of claim, debtor's subsequent complaint for turnover of property, rejection of executory contract and related relief was a counterclaim to this proof of claim and as such is a core proceeding); *Franklin Computer Corp. v. Apple Computer, Inc. (In Re Franklin Computer Corp.)*, 60 B.R. 795 (Bkrtcy.E.D.Pa.1986) (holding that an action brought by a debtor for breach of an agreement to settle a copyright and patent infringement suit is a core proceeding pursuant to § 157(b)(2)(C) where the defendant had earlier filed a proof of claim); *Westside Utilities, Inc. v. Robert E. Ratliff Co., Inc. (In Re Westside Utilities, Inc.)*, 53 B.R. 254 (Bkrtcy.N.D.Miss.1985) (holding that this matter is a core proceeding since the defendant had filed a proof of claim against the estate and the estate sought to settle against this claim); see also, *Macon Prestressed Concrete Co. v. Duke*, 46 B.R. 727 (M.D.Ga.1985); *In Re Wood*, 52 B.R. 513 (Bkrtcy.N.D.Ala.1985); *Lombard-Wall Inc. v. N.Y.C. Housing Development Corp. (In Re Lombard-Wall Inc.)*, 44 B.R.

928 (Bkrtcy.S.D.N.Y.1984); but see *Judge v. Ridley & Schweigert (In Re Leedy Mortgage Co. Inc.)*, 62 B.R. 303 (E.D.Pa.1986) (holding that trustee's counterclaim seeking damages for negligence and breach of contract asserted against accounting firm that had earlier filed claims against the estate was not a core proceeding, since this matter was very different from proceedings that routinely arise in the administration of a bankrupt estate); *Century Brass Products v. Millard Metals Surface Center (In Re Century Brass Products)*, 58 B.R. 838 (Bkrtcy.Conn.1986) (holding that while it may be reasonable to find implied consent to bankruptcy court jurisdiction when a creditor files a proof of claim and the estate then files a counterclaim, no such justification exists for classifying as a core proceeding a counterclaim filed against the estate by a party whom the estate has initially sued); "proceedings to determine, avoid or recover preferences", § 157(b)(2)(F), *Judson v. International Terminal Operating Co. Inc. (In Re Oro Import Co., Inc.)*, 52 B.R. 357 (Bkrtcy.S.D.Fla.1985); "motions to terminate, annul or modify the automatic stay", § 157(b)(2)(G), *Carstens Health Industries v. Cooper (In Re Cooper)*, 47 B.R. 842 (Bkrtcy.W.D.Mo.1985); "proceedings to determine, avoid or recover fraudulent conveyances", § 157(b)(2)(H); *Carlton v. B.A.W.W., Inc.*, 751 F.2d 781, 788 (5th Cir.1985); determinations as to the dischargeability of particular debts, § 157(b)(2)(I); objections to the discharge of a debtor, § 157(b)(2)(J); actions to determine the validity, extent or priority of liens, § 157(b)(2)(K). *Rainey v. International Harvester Credit Corp.*, 59 B.R. 987 (N.D.Ill.1986); but see *Brooklyn Jenapo Federal Credit Union v. Shain (In Re Shain)*, 47 B.R. 309 (Bkrtcy.E.D.N.Y. 1985) (matter was not a core proceeding under § 157(b)(2)(K) since the lien in question did not affect property of the debtor); *Climate Control Engineers, Inc. v. Southern Landmark Inc. (In Re Climate Control Engineers, Inc.)*, 51 B.R. 359 (Bkrtcy. M.D.Fla.1985) (matter not a core proceeding under § 157(b)(2)(K) since the complaint sought a determination of the validity, extent, or priority of liens of parties claimed by others than the debtor against property that is *not property of the estate*); hearings to confirm a plan, § 157(b)(2)(L); orders approving the use or lease of property, including the use of cash collateral, § 157(b)(2)(M), *Franklin Computer Corp. v. Apple Computer (In Re Franklin Computer Corp.)*, 60 B.R. 795, 803 (Bkrtcy.E.D. Pa.1986); *Reilly v. Nettie Lee Shops of Bristol, Inc. (In Re Nettie Lee Shops of Bristol, Inc.)* 49 B.R. 946 (Bkrtcy.W.D.Va. 1985) "orders approving a sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate", § 157(b)(2)(N).

There is no question but that the exercise, creation, interpretation and enforcement of rights which do not exist independent of the Bankruptcy Code constitute proceedings which are core; nor is there any doubt that adjudications of rights which have no relation to the Code are non-core. However, since those rights which are the subject of bankruptcy proceedings rarely, if ever, exist independent of the primordial conflict between debtor and creditor, courts are required to assign to hybrid situations a core or non-core label. In the absence of standards, indeed in the judicial process of evolving standards, it is not unexpected that inconsistencies and conflicts arise.

██ Notwithstanding contrary holdings in factually analogous cases such as *Lion Capital*, the striking factual similarity between *Marathon* and *Acolyte* compels the conclusions that as a garden variety contested collection proceeding, *Acolyte* is clearly a non-core proceeding whose determination revolves solely about the question of who breached the contract, and the extent to which such breach may have been justifiable or excusable.

## IS THIS MATTER A CORE TURNOVER PROCEEDING UNDER SECTION 157(b)(2)(E)?

Acolyte argues that despite the presence of state law issues, this matter should be

considered core pursuant to either § 157(b)(2)(A), (E), or (O).

An action commenced by a party seeking a turnover order pursuant to 11 U.S.C. § 542 is a core proceeding. 28 U.S.C. § 157(b)(2)(E). The plaintiff argues that this adversary proceeding is such a core proceeding since it is seeking to recover monies allegedly due and owing under its contract with the defendants. Plaintiff's Memorandum of Law at 13–24.

The defendants rebuff this argument by asserting that this is "obviously not a turnover proceeding ... because there is no matured debt payable on demand. There is only the debtor's right to sue on an alleged breach of contract." Citing Defendants' Reply Memorandum of Law at 2.

11 U.S.C. § 542 creates summary turnover rights as follows:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

(c) Except as provided in section 362(a)(7) of this title, an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced.

(d) A life insurance company may transfer property of the estate or property of the debtor to such company in good faith, with the same effect with respect to such company as if the case under this title concerning the debtor had not been commenced, if such transfer is to pay a premium or to carry out a nonforfeiture insurance option, and is required to be made automatically, under a life insurance contract with such company that was entered into before the date of the filing of the petition and that is property of the estate.

(e) Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

Section 542 is designed to compel an entity, other than a custodian, to turn over to the trustee property in which the estate has a real and substantial interest such as: (1) all property that is capable of being used, sold or leased by the debtor, or that may be claimed as exempt pursuant to 11 U.S.C. § 522, unless this property is of minimum value or benefit to the estate, § 542(a); (2) a debt that is property of the estate and is either matured, payable on demand, or payable on order, § 542(b); (3) books, documents, records, and any other papers that pertain to the debtor's property or financial affairs, § 542(e).

In order for Acolyte's action to be considered a "core" turnover proceeding under § 157(b)(2)(E), it must fall within one of these three enumerated situations. Clearly, § 542(b) is inapplicable to the facts of this case since Acolyte is not seeking any documentation or papers in its action. Since Acolyte is seeking only monetary damages, rather than any tangible proper-

ty, it is fair to say that it is not seeking a turnover of property that is capable of being used, sold or leased pursuant to § 542(a). If this action is to be classified as a turnover proceeding, it would have to fall under Section 542(b). An analysis of pertinent case law is necessary in determining whether this action is a 542(b) turnover proceeding.

In *Mann v. Kreiss (In Re Kreiss)*, 58 B.R. 999 (E.D.N.Y.1986), the district court had to determine whether an adversary proceeding, commenced by a Chapter 7 trustee, seeking a turnover and accounting of the corpus of a trust which had been created by two codicils to a Will was a core proceeding. The court began its discussion by pointing out that because § 157(b)(3) provides that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be effected by state law," the issue could best be resolved by considering the "nexus" between this proceeding involving a state law claim and the bankruptcy estate. *Mann v. Kreiss*, 58 B.R. at 1004. The court went on to discuss *Salomon v. Kaiser (In Re Kaiser)*, 722 F.2d 1574 (2d Cir.1983) which held in part that an action to impose a constructive trust is a core proceeding. The *Mann* court cited *Kaiser* for its astute observation that although an action to impose a constructive trust could very well have been brought in a state court, the adversary proceeding was brought on as a result of fraudulent transfers made in derogation of the bankruptcy laws. "In other words, federal law provides the *right* upon which the remedy of the constructive trust sought here is based. In contrast, the action in *Marathon* was independent of the bankruptcy laws." *Mann*, 58 B.R. at 1005 (quoting *Salomon* at 1582). Applying this analysis to the facts of the *Mann* case, the district court concluded that since it was not a traditional action to attach assets or to declare the validity or construction of a testamentary trust, but instead was an action brought pursuant to 11 U.S.C. § 541(a)(5)(A) and § 541(c)(2), "the nexus between the proceeding and the bankruptcy estate is suffi-

ciently close to find that it is a 'core proceeding.'" *Mann*, 58 B.R. at 1005. The critical point made by *Mann v. Kress* and *Salomon v. Kaiser* is that where a cause of action "has no life of its own in either state or federal common law or statute independent of the federal bankruptcy laws," then it is a core proceeding. *Mann*, 58 B.R. at 1005 (quoting *Salomon* at 1582).

The bankruptcy court in *R.I. Lithograph Corp. v. Aetna Casualty & Surety Co. (In Re R.I. Lithograph Corp.)*, 60 B.R. 199 (Bkrtcy.R.I.1986) had to determine whether a complaint seeking damages for the alleged breach of its contractual obligations, filed by the debtor against its insurance carrier, was a core proceeding. Since the defendant was vigorously disputing its liability under the contract, the court found that no matured debt had been incurred at the time of the action, and therefore it could not classify this as a true turnover proceeding. *Id.* at 204. The court remarked that the facts in this action were very similar to those in *Marathon*, and therefore this matter would have to be classified as a non-core related proceeding. *Id. E.g. Palmisano v. Briggs (In Re Northern Design Inc.)*, 53 B.R. 25 (Bkrtcy. Vt.1985) (holding that a contract action filed by trustee is not a core turnover proceeding); *Maislin Industries U.S., Inc. v. C.J. VanHouten E. Zoon, Inc. (In Re Maislin Industries U.S., Inc.)*, 50 B.R. 943 (Bkrtcy.E.D.Mich.1985) (holding that an adversary proceeding filed by a debtor against its customers for underpayment of pre-petition freight charges is not a core turnover proceeding under § 157(b)(2)(E)); *Bokum Resources Corp. v. Long Island Lighting Company (In Re Bokum Resources Corp.)*, 49 B.R. 854 (Bkrtcy.N.M. 1985) (holding that this matter which involved breach of contract and tortious interference issues did not constitute a core turnover proceeding).

Numerous bankruptcy courts which have addressed the question of whether an action to recover accounts receivable is a core turnover proceeding under § 157(b)(2)(E) have reached differing conclusions.

In *Satelco Inc. v. North American Publishers Inc. (In Re Satelco)*, 58 B.R. 781 (Bkrtcy.N.D.Tex.1986), the debtor, a supplier of long distance phone service, alleged that certain customers had refused to pay for these services and were therefore obligated under § 542(a) to pay such charges plus interest and attorneys' fees. *Id.* at 782. The debtor argued that this action was a core proceeding since it sought a turnover of property of the estate. *Id.* at 784. The bankruptcy court focused in on the fact that the debtor's right to this money was disputed and reasoned that:

> [u]nless there is no question remaining as to the liability of the defendant to the estate, e.g., a final judgment from a court of competent jurisdiction or a stipulation by the defendant, it cannot be said that no dispute exists, and the money Debtor seeks to recover is not with the Debtor's constructive possession.... A turnover order, unlike a money judgment by a state or federal district court, is less a determination of liability than an exercise of the court's equitable power. *Id.* at 786.

The court concluded that so long as there was a question remaining as to the validity of the debtor's action, the claim could not be enforced in a bankruptcy court by a turnover order. *Id.* In so holding, the court remarked that "actions to collect accounts receivable based upon state law contract principles do not fall within the scope of turnover actions as contemplated by § 542 and § 157(b)(2)(E), absent a final judgment from a court of competent jurisdiction, a stipulation, or some other binding determination of liability." *Id.* at 789.

In *Century Brass Products, Inc. v. Millard Metals Service Center, Inc.*, 58 B.R. 838 (Bkrtcy.Conn.1986), the debtor sought to recover monies plus interest and costs on pre-petition accounts receivable for metal materials sold to the defendant. The defendant made a motion in bankruptcy court for a determination as to whether the action was a core proceeding. *Id.* at 839. The court examined the development of the turnover power of the bankruptcy court and remarked that under the 1898

Act "[t]he summary turnover procedure could not be used to litigate substantial disputes concerning alleged property of the estate held adversely to the estate." *Id.* at 841. The court continued its analysis by observing that the purpose of a § 542 turnover order is to gather into the estate property which clearly fell within the definition of "property of the estate." *See Id.* Since the matter before the court was in essence a disputed breach of contract action, the court held that "the reference in § 157(b)(2)(E) to an 'order to turn over property of the estate' does not include an action to collect upon an accounts receivable even if [debtor's] account receivable, could be included within the parameters of § 542(b)." *Id.* at 843. *See also Sokol v. Massachusetts Mutual Life Insurance Co. (In Re Sokol)*, 60 B.R. 294 (Bkrtcy.N.D.Ill. 1986); *George Woloch Co., Inc. v. Longview Capital Plastics Pipe, Inc. (In Re George Woloch Co., Inc.)*, 49 B.R. 68 (Bkrtcy.E.D.Pa.1985); and *Atlas Automation, Inc. v. Jensen, Inc. (In Re Atlas Automation Inc.)*, 42 B.R. 246 (Bkrtcy.E. D.Mich.1984) which held that an action commenced by the debtor to collect accounts receivable was a non-core related proceeding.

Reported cases exist with opposite results. These cases, however, read BAFJA in a fashion which frustrates *Marathon* rather than follows it. The bankruptcy court in *Lesser v. A–Z Associates (In Re Lion Capital Group)*, 46 B.R. 850 (Bkrtcy. S.D.N.Y.1985), *aff'd*, 63 B.R. 199 (S.D.N.Y. 1986) held that an adversary proceeding commenced by a trustee seeking an order to compel limited partners to make capital contributions pursuant to their contractual obligations was a core proceeding pursuant to § 157(b)(2)(E). The court found that this action fell within the rubric of § 542 since the trustee was seeking a turnover order of a chose in action or debt which, according to the court, was property of the estate. *Id.* at 856.

*See also National Equipment & Mold Corp. v. Metropolitan Bank of Lima (In Re National Equipment & Mold Corp.)*,

64 B.R. 239 (Bkrtcy.N.D.Ohio 1986) (holding that trustee's actions to recover accounts receivable and for conversion of funds are core proceedings pursuant to § 157(b)(2)(E).

To the extent that any lawsuit (*Marathon* included) seeks the recovery of funds predicated only upon a successful determination of liability it could be argued that it constitutes a turnover. The statute, however, must contemplate something more, else the constitutional defect in the pre-BAFJA state of the law recognized by *Marathon* would in no way have been improved by that legislation.

■ In the *Lion Capital* case, for instance, if all that was being sought was a turnover of the cause of action, then all that the bankruptcy court had the jurisdiction to do was to order the cause of action transferred and then leave the parties to the state court to enforce it. To the extent that a BONAFIDE dispute exists with regard to the existence of an identifiable fund or res, a proceeding to recover that res is not a turnover within the meaning of BAFJA unless and until the existence, magnitude and identity of the res are first established. The jurisdiction to establish this existence, magnitude and identity is precisely what *Marathon* prohibits Congress from granting to the bankruptcy court. In order to protect the constitutional integrity of BAFJA, it must therefore be read so as not to include contested collection suits to be core proceedings.

In the case before us, suppose for a moment that the defendant were not the City of New York, but rather a private corporation. How could this proceeding be denominated one to turnover a specific res unless there were first pleaded and proved (1) that the defendant had sufficient assets to pay the judgment sought by the debtor and (2) that such assets had been segregated such that no other entity could be said to have rights therein equal to or superior to those of the debtor.

A few months after deciding *Lion Capital*, the same bankruptcy court was asked to determine whether a proceeding in which the debtor sought insurance proceeds was core where the insurer contested coverage and argued that the notice requirement under the policy had not been met. *Fisher v. The Insurance Company of the State of Pennsylvania (In Re Pied Piper Casuals, Inc.)*, 50 B.R. 549 (Bkrtcy. S.D.N.Y.1985). The court found that the insurer's obligation to pay insurance proceeds "is matured upon the occurrence of the loss".[4] However, the court went on to state that:

"[e]ven were an action to recover insurance proceeds not to be strictly construed as a turnover proceeding, there is a significant nexus between such proceeding and bankruptcy considerations which in light of the similarity strongly justifies treatment of such actions as core proceedings.... Recovery on insurance policies that nearly all debtors possess when entering bankruptcy are generally essential to achievement of the overall purposes of the bankruptcy court system and the Code ..." *Id.* at 551 [citations omitted].

■ The court's reasoning in *In Re Pied Piper Casuals, Inc.* is flawed because it ignores the rationale behind the Supreme Court's decision in *Marathon*. A bankruptcy court cannot hear and make its final determination absent consent of the parties in a non-core proceeding merely because of some peripheral connection to the bankruptcy case. Such reasoning flies in the face of *Marathon* and does an injustice to Article III. Section 157(b)(2)(E), as well as

---

**4.** The court analogized this type of action to a cause of action based on negotiable instruments which more clearly falls within the definition of turnover proceedings.

Although the obligation to pay is conditioned upon timely provision of a written proof of loss, such a condition is akin to the demand and presentment conditions applicable to causes of action based on negotiable instruments.... Thus, an action on an insurance policy either is, or bears a strong similarity to, a turnover proceeding which Congress has expressly included in the open-ended definition of core proceedings. *Fisher,* 50 B.R. at 51.

§ 542, must be strictly construed in a fashion which will avoid conflict with *Marathon*. A turnover proceeding can only be considered a core proceeding under § 542(b) when its purpose is the collection rather than the creation, recognition, or liquidation of a matured date. Since the *Pied Piper* and *National Equipment* courts were called upon to determine whether debt was matured, due and owing, it was being asked to go beyond that which the Constitution requires and the statute permits. When a bona fide dispute exists as to liability involving state law, then the proceeding cannot be core under § 157(b)(2)(E). *Marathon* at 2871.

■ In this adversary proceeding there is a legitimate dispute as to whether Acolyte is entitled to recover the funds claimed due under the contract. Since a resolution of this action involves a state law determination of the defendant's liability under the contract, it is a step away from a true § 542 turnover proceeding and, therefore, does not constitute a core proceeding under § 157(b)(2)(E).

### IS THIS MATTER A CORE PROCEEDING PURSUANT TO SECTIONS 157(b)(2)(A) and (O)?

Acolyte also contends that this action should be considered a core proceeding under §§ 157(b)(2)(A) and (O), commonly referred to as the "catchall" provisions of 28 U.S.C. § 157(b) which provides that:

(A) matters concerning the administration of the estate;

\*　　\*　　\*　　\*　　\*　　\*

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

are core proceedings.

Acolyte argues that this action is a matter concerning the administration of the estate since its ability to fund a reorganization plan hinges upon the successful litigation of these claims against the City of New York. It further contends that "if [it] is successful in its claim against the City of New York, said success will be the basis of the formulating of a plan for the payment of its debts." Plaintiff's Memorandum of Law at 7. Consequently it claims that "there is a sufficient nexus to justify treatment of the within matter as a core proceeding." *Id.* at 12. The plaintiff also contends that this action is a core proceeding pursuant to § 157(b)(2)(O) since "one of the steps necessary to liquidate an estate is the collection of sums due and owing." *Id.* at 15.

The flaw in this reasoning is that were plaintiff's argument to prevail, *Marathon* itself would constitute a core proceeding and BAFJA would be as unconstitutional as was the predecessor statute that it sought to remedy.

Also, while the recovery of a contested account receivable is certainly both a matter "concerning the administration of the estate" as well as one "affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship" as set forth in the "catchall" definition, the argument overlooks the obvious: that while recovery of the contested receivable meets the criteria, a resolution in defendant's favor would not. Resolution of the Acolyte suit in favor of the defendants would retain Acolyte's status quo. It could not affect the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship since such resolution in defendant's favor would imply that there were no assets of the estate in the hands of the defendant for the plaintiff to administer and that therefore there was no debtor-creditor relationship. Therefore, since the recovery of the contested account receivable is predicated upon a prior successful outcome of the judicial contest, the contested proceeding does not meet the definition of core unless and until it has been concluded in favor of the plaintiff.

Were the defendant to prevail, the plaintiff-debtor would be in no different position than it would have been had in the litiga-

tion not been instigated, and the test would not be met. The result of plaintiff's argument therefore would be that the bankruptcy court hearing the *Acolyte* adversary proceeding would have core jurisdiction only to grant judgment in favor of the debtor; not against it. Since the jurisdiction of the bankruptcy court to hear the matter can only be established after final judicial recognition and liquidation of the plaintiff's right to recovery, the bankruptcy court cannot have jurisdiction to hear the proceeding which establishes those contested rights of the plaintiff.

Were any court to hold otherwise, the following anomalous scenario could occur: the plaintiff prevails in the proceeding under consideration; the plaintiff collects its judgment from the defendants; notwithstanding, the plaintiff-debtor is unable either to confirm a plan or, if confirmed, is unable then to consummate it; upon application of a party in interest the court then dismisses the chapter 11 case on those grounds pursuant to 11 U.S.C. § 1112(b); pursuant to 11 U.S.C. § 349(b)(3) all property of the estate thereupon revests in the entity in which such property was vested immediately before the commencement of the chapter 11 case; pursuant to 11 U.S.C. § 541(a)(7) this includes "[a]ny interest in property that the estate acquires after the commencement of the case" i.e.: plaintiff's recovery from the defendants.[5] That Congress had intended BAFJA to be interpreted so as to include this possibility should not be decreed by any rational court. The only way to avoid it is to have the order awarding plaintiff its recovery made in a court other than the court exercising federal bankruptcy jurisdiction, whether that be the district or the bankruptcy court.

While this analysis supports those cases which hold that collection cases are core only when there is no bona fide dispute as to either liability or its amount, none appears specifically to have considered the foregoing reasoning.

*See e.g., Piombo Corp. v. Castlerock Properties (In Re Castlerock Properties),*

781 F.2d 159 (9th Cir.1986); *Arnold Printworks Inc. v. Apkin (In Re Arnold Printworks, Inc.),* 61 B.R. 520 (D.Mass.1986); *Interconnect Telephone Services, Inc. v. Farren,* 59 B.R. 397 (S.D.N.Y.1986); *K–Rom Construction Corp. v. Behling (In Re K–Rom Construction Corp.),* 46 B.R. 745 (S.D.N.Y.1985); *R.I. Lithograph Corp. v. Aetna Casualty & Surety Company (In Re R.I. Lithograph Corp.),* 60 B.R. 199 (Bkrtcy.R.I.1986); *Taxel v. Veri-Fone, Inc. (In Re American Manufacturing Technologies, Inc.),* 60 B.R. 645 (Bkrtcy.S.D.Cal. 1986); *Nanodata Computer Corp. v. Kollmorgen Corp. (In Re Nanodata Computer Corp.),* 52 B.R. 334 (Bkrtcy W.D.N.Y. 1985); *Shaford Companies, Inc. v. CURR Int'l. Coffees, Inc. (In Re Shaford Companies, Inc.),* 52 B.R. 832 (Bkrtcy N.H.1985); *Braucher v. Continental Ill. Nat'l. Bank & Trust Co. of Chicago (In Re Ill.Cal. Express, Inc.),* 50 B.R. 232 (Bkrtcy Colo.1985); *Cameron v. Anderson (In Re American Energy, Inc.),* 50 B.R. 175 (Bkrtcy N.D.1985); *Bokum Resources Corp. v. Long Island Lighting Co. (In Re Bokum Resources Corp.),* 49 B.R. 854 (Bkrtcy. N.M.1985); *Morse Electric Co., Inc. v. Logicon, Inc. (In Re Morse Electric Co., Inc.),* 47 B.R. 234 (Bkrtcy.N.D.Ind. 1985); *Mohawk Indus., Inc. v. Robinson Indus., Inc.,* 46 B.R. 464 (Bkrtcy D.Mass. 1985) holding that a state law contract-type action that literally falls within the language of § 157(b)(2)(A) and (O) is a non-core related proceeding.

To be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment although of necessity there may be a peripheral state law involvement. Congress gave bankruptcy courts flexibility to carry out the provisions of Title 11 by inserting the catchall provisions in the framework of § 157 realizing that situations not foreseeable at the time of BAFJA's enactment would have to be dealt with in that court. However, any reasonable

---

**5.** Acolyte and the City must now relitigate *de*    *novo* in the state court.

reading of §§ 157(b)(2)(A) and (O) should be kept within this framework and therefore within the holding in *Marathon*.

Examples of proceedings which properly fall within the scope of the catchall provisions of § 157 may be found in *Manville Corp. v. Equity Security Holders Committee (In re Johns-Manville Corp.)*, 60 B.R. 842 (S.D.N.Y.1986) (action to enjoin security holders committee from pursuing state court action to compel shareholders meeting is a core proceeding); *Walter E. Heller & Company v. Langenkamp (In Re Tureaud)*, 59 B.R. 973 (N.D.Okla.1986) (trustee's application for substantive consolidation of certain affiliate corporations constitutes core proceeding); *In Re GHR Energy Corp.*, 60 B.R. 52 (Bkrtcy.S.D.Tex. 1985) (motion made by creditor to disqualify law firm representing debtor in turnover litigation is a core proceeding); *McLemore v. Thomasson (In Re Thomasson)*, 60 B.R. 629 (Bkrtcy.M.D.Tenn.1986) (motion to change venue is a core proceeding); *In Re Oceanquest Feeder Service, Inc.*, 56 B.R. 715 (Bkrtcy.Conn.1986) (motion to change venue is a core proceeding); *In Re Nexus Communications, Inc.*, 55 B.R. 596 (Bkrtcy.E.D.N.C.1985) (motion for 11 U.S.C. § 305 abstention and motion to assume lease are core proceedings); *Rustic Mfg., Inc. v. Marine Bank Dane County (In Re Rustic Mfg., Inc.)*, 55 B.R. 25 (Bkrtcy.W.D.Wis.1985) (principal employees of corporate debtor's action to enjoin secured creditor from maintaining state court action against their guarantees is a core proceeding).

■ Despite the clear holding of *Marathon* and the Article III proscriptions, numerous courts still hold that a garden variety state law contract action is a core proceeding under the catchall provisions. The case perhaps most often cited to support such a finding is *Lesser v. A–Z Associates (In Re Lion Capital Group)*, 46 B.R. 850 (Bkrtcy.S.D.N.Y.1985), *aff'd* 63 B.R. 199 (S.D.N.Y.1986). [Note, however, the limited effect of this affirmance discussed *infra* ].

*Lion Capital* involved an adversary proceeding to enforce limited partners' contractual capital obligations. The court held the action core under both the catchall provisions and § 157(b)(2)(E). In its opinion, the court cited the "considerable nexus between the exercise of Article I power to enable the district courts to refer core proceedings to the bankruptcy courts for final decision and the matters presented by these litigations" as one rationale for its holding. *Id.* at 859.

The court placed great importance on the goal of getting creditors paid in a bankruptcy case. That the proceedings which result in this goal be done "quickly by a specialized adjunct court is particularly important in view of the automatic stay of creditors pursuing their state law remedies, as is now provided by § 362(a) of the Bankruptcy Code. To refer such matters to crowded district court calendars or to the even greater backlog of the state court system is to greatly impair, if not defeat, the goals of rehabilitation and payment of creditors." *Id.* at 860. In part, for these reasons, the court held that this state law action was a core proceeding. On April 11, 1986 the Southern District, while affirming the bankruptcy court's decision, stated that "[a]lthough the movants contend that they have filed an appeal from this determination which we must hear, we have neither received the notice nor the party's briefs. Until such time as the court receives the appeal as fully briefed on the various issues underlying Judge Buschman's opinion, we decline to take a position on whether the adversary proceedings are core or noncore proceedings and we now abide by Judge Buschman's determination." *In Re Lion Capital Group*, 63 B.R. at 209.

*See also Franklin Computer Corp. v. Apple Computer (In Re Franklin Computer, Inc. Corp.)*, 60 B.R. 795 (Bkrtcy.E.D.Pa.1986); *Mansker v. Campbell (In Re Mansker)*, 60 B.R. 803 (Bkrtcy.Mass. 1986); *National Equip. & Mold Corp. v. Apollo Tire Co., Inc.*, 60 B.R. 133 (Bkrtcy. N.D.Ohio 1986); *L.A. Clarke & Son, Inc. v. Bullock Constr. Inc. (In Re L.A. Clarke & Son Inc.)* 51 B.R. 31 (Bkrtcy.D.C.1985);

*Baldwin-United Corp. v. Thompson (In Re Baldwin-United Corp.),* 48 B.R. 49 (Bkrtcy.S.D.Ohio 1985) holding that a state law contract-type action is a core proceeding under § 157(b)(2)(A) and (O). Underlying these cases is the notion that a traditional contract-type action which can be litigated promptly in the bankruptcy court should be considered core since a successful resolution would have a salutary impact on the estate. There is no doubt that such a result would have a relation to and an impact upon the administration of the estate. However, no matter how desirable the result would be, such "nexus" in and of itself is insufficient to warrant classifying the matter as a core proceeding unless BAFJA is to be read as ignoring *Marathon.*

An action is not a core proceeding simply because the outcome of a state law type action can result in funds being brought into an estate; but rather, that connection makes it a "related proceeding." When defining precisely what "related proceeding" is under this statutory scheme, courts have set out the following test:

> If an action has a direct and substantive impact on the bankruptcy estate or its administration, then it is related to the bankruptcy case and jurisdiction exists. But the controversy has only a vague or incidental connection with a pending case, and any impact its resolution may have on the bankruptcy estate is speculative, indirect or incidental, then the matter is unrelated to the bankruptcy case and [a bankruptcy court] would not hear it. *Citizens Nat'l Bank of Bowling Green v. Schaberg Lumber Co. (In Re Bowling Green Truss, Inc.),* 53 B.R. 391, 394 (Bkrtcy.W.D.Ky.1985).

Another test courts use in determining whether a proceeding is "related to" a case is "whether the outcome of the proceeding could conceivably have any impact on the estate being administered in bankruptcy." *Fleet v. United States Consumers Council, Inc. (In Re Fleet),* 53 B.R. 833, 838 (Bkrtcy.E.D.Pa.1985) (citing *Bobroff v. Continental Bank (In Re Bo-*

*broff),* 766 F.2d 797, 802 (3d Cir.1985); *Pacor, Inc. v. Higgins (In Re Pacor, Inc.),* 743 F.2d 984, 994 (3d Cir.1984)). However, if a claim "will have scant or no impact on the administration of the title 11 case", then there is no federal court jurisdiction over the matter under title 11. *Medina-Figueroa v. Heylinger,* 63 B.R. 572 (D.P.R. 1986).

Acolyte's contention, that this matter is a core proceeding pursuant to the catchall provision, since the prompt and successful litigation of this action will result in an estate capable of funding a plan, is without merit. The argument made by the plaintiff is sufficient only to support a finding that this matter is a "related proceeding" under the test described above. However, in light of Article III and the Supreme Court *Marathon* decision, it cannot be concluded that the state law contract action could be found to be a core proceeding under § 157(b)(2)(A) and (O). Also, the policy of fostering judicial economy by not creating a situation in which a matter might have to be tried twice (first in the bankruptcy court and then in the district court), further supports a finding that this action is not a core proceeding. Nonetheless, there may be sufficient connection between the successful litigation of this action and the administration of the estate to warrant a finding that this is a related proceeding.

## DEFENDANTS' MOTION FOR A DISTRICT COURT ORDER OF ABSTENTION PURSUANT TO 28 U.S.C. 1334(c)

The defendants move for an order of abstention pursuant both to § 1334(c)(1), the permissive abstention provision, and § 1334(c)(2), the mandatory abstention provision. If the district court is to find that all the elements set forth in § 1134(c)(2) are met then it must abstain from hearing a proceeding. If that is indeed the case, it would be unnecessary to determine whether § 1334(c)(1), the permissive abstention provision, is applicable. The defendants argue that in this case all of the elements

of mandatory abstention are present. In the alternative, they contend that the court should exercise its discretion under § 1334(c)(1) and abstain in the interest of comity stating: "[t]he issues involved in a suit arise solely under State law. There is no federal statute to be interpreted. The issues and particularly the affirmative defenses are those unique to the City of New York under state law. The courts of the State have substantial expertise in the adjudication of contractual disputes between the City and its vendors. Therefore, in the alternative, discretionary abstention is appropriate." Def.'s Memorandum of Law 29–30. [It is important to note that a decision to abstain under § 1334(c)(2) "is not reviewable by appeal or otherwise."]

28 U.S.C. § 1334 states:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

(d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the estate.

Preliminary to a discussion of this application, it is important to note the interaction between §§ 1334 and 157.

The bankruptcy courts are authorized by law to exercise power only with respect to those cases and proceedings that have been referred to them by the district courts pursuant to § 157(a). The district courts themselves derive their subject matter jurisdiction from 28 U.S.C. § 1334. The essential step necessary to vest jurisdiction in the bankruptcy judges is the reference of bankruptcy cases or proceedings to them by the district courts, and the only authority for the delegation of the subject matter jurisdiction of the district courts to the bankruptcy judges is that conferred by 28 U.S.C. § 157(a). Norton & Lieb, *Jurisdiction and Procedures Under the 1984 Bankruptcy Amendments*, 1985 Annual Survey of Bankruptcy Law 53, 84.

The power of the district court and of the bankruptcy court units to act in a bankruptcy matter is dependent upon the existence of a threshold jurisdictional predicate for the exercise of jurisdiction over a bankruptcy case or proceeding. The 1984 Act, in 28 U.S.C. § 1334(b), specifies such predicates. Section 1334(a) confers jurisdiction over the bankruptcy case itself, (i.e., the "case" that is commenced by the filing of a petition for relief under a chapter of the Bankruptcy Code), but that provision does not confer jurisdiction of "proceedings" connected to the case.

Within each bankruptcy case, there are many proceedings. Civil proceedings are distinguished by § 1334(b) from bankruptcy cases, which are covered by § 1334(a). Section 1334(b) empowers the district court to exercise original but non-exclusive jurisdiction over all civil proceedings that have a Nexus to bankruptcy, as specified by that provision ... Unless at least one such Nexus exists, neither the district court nor the bankruptcy judge can exercise any bankruptcy jurisdiction, and the dispute can then only be determined by a nonbankruptcy court of competent jurisdiction, which might be a United States district court acting pursuant to federal question, diversity, or other nonbankruptcy jurisdiction, or a state court. *Id.* at 86.

The bankruptcy court in *Allied Mechanical & Plumbing Corp. v. Dynamic Hostels Housing Dev. Fund Co., Inc. (In Re Allied Mechanical & Plumbing Corp.)*, 62 B.R. 873 (Bkrtcy.S.D.N.Y.1986) lists the criteria that must be shown before an order under § 1334(c)(2) can issue.

1. "A party in a proceeding must make a timely motion for abstention by the court. The adversary proceeding must be 'based upon a state law claim or state law cause of action.'

\*    \*    \*    \*    \*    \*

3. The adversary proceeding must be 'related to' the title 11 case but it must not 'arise under' the title 11 or 'arise in' the title 11 case.

4. The adversary proceeding must be one which could not have been commenced 'in a court of the United States absent jurisdiction under this section [1334]'.

5. An action must have been commenced and is pending in a state forum of appropriate jurisdiction.

6. The pending state court action must be one that 'can be timely adjudicated' in that forum." *Id.* at 877–78 (quoting § 1334(c)(2)).

The facts in *Allied Mechanical & Plumbing Corp.* are similar to those in *Acolyte.* In *Allied Mechanical,* the plain-tiff/debtor commenced an adversary proceeding against a general contractor and bonding company for labor and materials allegedly performed by the debtor pursuant to a written agreement and oral requests. The debtor filed a verified notice of lien in the Bronx County Clerk's Office and seeks enforcement of its lien. *Id.* at 875–76.

Prior to the commencement of its Chapter 11 case, the debtor had commenced "a substantially similar" action in Supreme Court, Bronx County. This pre-petition action was still pending at the time the adversary proceeding was commenced, with discovery having been conducted and motions having been made and resolved. The defendant moved for an order of abstention under § 1334(c)(2) "so that the debtor's pending prepetition state court action should proceed to complete determination of the contractual dispute between all the parties." *Id.* at 876.

The court, in examining whether the facts in the proceeding met the criteria set forth in § 1334(c)(2) found:

1. The defendant's motion to abstain, made approximately two months after commencement of the adversary proceeding was timely.

2. The proceeding was based exclusively on state contract and lien law.

3. The adversary proceeding did not "arise under" or "arise in" the title 11 case, but was rather merely "related to" the case.

4. Since there was no diversity or federal question jurisdiction over the matter, the adversary proceeding could not have been commenced absent jurisdiction under § 1334.

5. The pending state court action was substantially similar to the adversary proceeding.

6. Since the state court was actively proceeding toward trial, with discovery underway and certain motions having been resolved, it was clear that the state action could be timely adjudicated in that forum. *Id.* at 877–78.

Consequently, the court granted the defendant's motion for mandatory withdrawal under § 1334(c)(2). *Id.* at 879.

The district court in *State Bank of Lombard v. Chart House*, 46 B.R. 468 (N.D.Ill. 1985), a case in which the debtor was not a party, opined that a district court must abstain from "hearing a purely state law claim where there is no other basis for federal jurisdiction other than its relatedness to a bankruptcy proceeding (including where the debtor is a party) and where the claim can be timely adjudicated in state court." *Id.* at 472 (citing *Smith-Douglass Inc. v. Smith (In Re Smith-Douglass, Inc.)*, 43 B.R. 616, 617 (Bkrtcy E.D.N.C. 1984); *Atlas Automation, Inc. v. Jensen, Inc. (In Re Atlas Automation, Inc.)*, 42 B.R. 246, 248–49 (Bkrtcy.E.D.Mich.1984); *Dakota Grain Systems, Inc. v. Rauser Constr., Inc. (In Re Dakota Grain Systems, Inc.)*, 41 B.R. 749, 750–51 (Bkrtcy.D. N.D.1984)). The court concluded that since the state court complaint sought only the enforcement of the subordination agreement, the action revolved exclusively around state law issues, did not arise under title 11, and was merely related to the case. *State Bank of Lombard*, 46 B.R. at 472. Consequently, the court held that abstention was mandatory pursuant to § 1334(c)(2) and thereafter remanded the case back to the state court.

In *T.J. Borchardt v. Farmers State Bank of Sherburn, Minn. (In Re Borchardt)*, 56 B.R. 791 (D.Minn.1986) the district court had to determine whether the bankruptcy court properly abstained from considering an adversary proceeding and remanding it to the state court. Rather than determining whether the bankruptcy court had the power to abstain under § 1334(c)(2) the district court considered the bankruptcy court decision to be merely a recommendation. *Id.* 793. Then, based upon a *de novo* review of the files, the district court concurred with the bankruptcy court's recommendation and abstained from hearing this matter pursuant to the mandatory abstention provision.

For examples of other decisions applying § 1334(c)(2), *see also State of Ohio v. Commercial Oil Service, Inc. (In Re. Commercial Oil Service, Inc.)*, 58 B.R. 311 (Bkrtcy. N.D.Ohio 1986) (holding that the bankruptcy court must abstain from hearing a matter involving state environmental laws); *West v. Howard (In Re 610 Texas, Ltd.)*, 58 B.R. 700 (Bkrtcy.W.D.La.1986) (holding that the bankruptcy court must abstain from hearing a proceeding brought on to determine the ownership of promissory notes); *Baumgartner v. Baumgartner (In Re Baumgartner)*, 57 B.R. 517 (Bkrtcy.N. D.Ohio 1986) (holding that the bankruptcy court must abstain from considering a complaint in which the debtor-in-possession sought a determination of the validity of a pre-nuptial agreement in the context of the bankruptcy case); *In Re Horace*, 54 B.R. 671 (Bkrtcy.N.J.1985) (holding that the bankruptcy court had to abstain from hearing a state law claim brought on by a creditor alleging an equitable mortgage on the debtor's property).

Courts which find the mandatory abstention provision inapplicable generally base their decision on the fact that one or more of the requirements set forth in § 1334(c)(2) are lacking. E.g., *Cooper v. Coronet Insurance Company (In Re Boughton)*, 60 B.R. 373 (N.D.Ill.1986) (court would not abstain under § 1334(c)(2) from hearing trustee's action against debtor's insurance carrier for wrongful refusal to settle a suit since there was no pending state action at the time this adversary proceeding was commenced); *Corporacion de Servicios Mendicios Hospitalarios de Fajardo v. Izqierdo Mara (In Re Corporacion de Servicios Mendicos Hospitalarios de Fajardo)*, 60 B.R. 920 (D.P.R.1986) (suit by Puerto Rican Department of Health is an action arising under title 11 and therefore § 1334(c)(2) abstention is not warranted; *Huffman v. Perkinson (In Re Harbour)*, 60 B.R. 370 (W.D.Va.1985) (mandatory abstention was not applicable because trustee's action to recover monies was a core proceeding); *Macon Prestressed Concrete Co. v. Duke*, 46 B.R. 727 (N.D.Ga. 1985) (mandatory abstention not applicable

since diversity jurisdiction existed); *In Re Cobham Enterprises, Inc.*, 62 B.R. 191 (Bkrtcy.S.D.N.Y.1986) (court would not have abstained from determining whether the debtor must surrender its lease to its lessor since this proceeding involved exclusively Federal law, and no related state law action was pending); *General Instrument Corp. v. Financial and Business Services, Inc. (In Re Finley)*, 62 B.R. 361 (Bkrtcy.N.D.Ga.1986) (mandatory abstention was not warranted since this proceeding was not merely related to the case, but "arose under" title 11 since it involved a determination and allowance of claims against the estate, turnover of property and determination of the validity, extent or priority of liens); *Beker Industries Corp. v. Florida Land & Water Adjudicatory Commission (In Re Beker Industries Corp.)*, 57 B.R. 611 (Bkrtcy.S.D.N.Y.1986) (action brought on by debtors-in-possession seeking a preliminary injunction preventing the continuation of certain proceedings before the Florida Land & Water Adjudicatory Commission would not be subject to the mandatory abstention provision since the claim did not involve a consideration of state law, but rather turned on federal bankruptcy and constitutional provisions); *Blackman v. Seton (In Re Blackman)*, 55 B.R. 437 (Bkrtcy.D.C.1985) (district court would not be required to abstain from deciding an adversary proceeding in which the debtors sought a determination of the validity and extent of defendants' lien on their residence since the matter was core and could have been commenced in a district court under federal question jurisdiction, as well as pursuant to pendent jurisdiction based on a claim under the Federal Trust and Lending Act. Also no similar action had been commenced in a state court); *Burgess v. Liberty Savings Assoc. (In Re Burgess)*, 51 B.R. 300 (Bkrtcy.S.D.Ohio 1985) (court would not have to abstain from hearing adversary proceeding seeking an order requiring mortgagee to perform its obligations under a settlement agreement of mortgage foreclosure proceedings since there was no specific showing that the matter could be timely adjudicated in the state court); *Climate Control Engineers, Inc. v. Southern Landmark Assoc. (In Re Climate Control Engineers, Inc.)*, 51 B.R. 359 (Bkrtcy.M.D.Fla.1985) (debtor's complaint seeking damages for work performed under a subcontract and also seeking a determination as to the validity and extent of certain liens of unpaid contractors would not be subject to the mandatory abstention statute, since no similar state proceeding was pending); *In Re S.E. Hornsby & Sons Sand and Gravel Co., Inc.*, 45 B.R. 988 (Bkrtcy.N.D.La.1985) (trustee's action, seeking an order requiring shareholder of corporate debtor to turn over to the debtor assets of the debtor in the shareholder's possession and control, would not be subject to the mandatory abstention provision since the action arose under title 11 (11 U.S.C. § 542) and could not be timely adjudicated in a state forum).

■ The facts in *Acolyte* fit within all of the criteria set forth in § 1334(c)(2). First, the defendants made a timely motion for abstention. The adversary proceeding was initiated on June 9, 1986 and the motion before Chief Judge Weinstein seeking abstention and withdrawal of reference was made on July 21, 1986. Although the word "timely" is not defined in title 28, and although there is no definitive pronouncement as to who has the burden of establishing or negating timeliness, since there is no claim of prejudice or change in position between these dates, there is no reason to hold the motion untimely. Second, the resolution of this adversary proceeding, which appears to be a typical contested collection type of contract action, is governed exclusively by state law. Third, as pointed out in an earlier section of this report, the adversary proceeding does not arise "under title 11" or "in the title 11 case", but is merely "related to" the title 11 case. Fourth, since neither diversity nor other basis for federal jurisdiction exists in this proceeding, it could not have been commenced in the bankruptcy court or in the district court absent jurisdiction under § 1334. Fifth, a state court contract action substantially similar, if not completely iden-

tical, is pending in state court. Sixth, to the best of this court's knowledge, there is no indication that the state court action cannot be "timely adjudicated."

Although several bankruptcy courts have required the movant affirmatively to show that the matter can be timely adjudicated in the state court, *See e.g. Burgess v. Liberty Savings Assoc. (In Re Burgess)*, 51 B.R. 300 (Bkrtcy.S.D.Ohio 1985); *In Re S.D. Hornsby & Sons Sand and Gravel Co., Inc.*, 45 B.R. 988 (Bkrtcy.M.D.La. 1985), this would seem to reverse the usual burden implicit in the general rule that the party seeking to litigate in a federal forum must first establish that right. Moreover, the plaintiff in the state court action, who initially invoked the jurisdiction of that forum, would be better positioned to apprise the federal court of any long delay in having the matter adjudicated in the state court. In this matter, the plaintiff has not presented the court with any concrete reasons as to why its contract action cannot be timely adjudicated in the state court. The only thing that the plaintiff points to is a conclusory statement that matters generally take longer to work their way through the state court in this area of the country. However, this statement is not accurate. An examination of pertinent statistics indicate there is no great disparity between the median time it takes for a civil proceeding to work its way through the state or federal system.[6] Consequently, this court believes that the *Acolyte* action can be timely adjudicated in the state court.

Accordingly, this court concludes and determines:

1) The instant action is not a core proceeding in which the Bankruptcy Judge may hear and enter final orders pursuant to 28 U.S.C. § 157(b)(1), but rather, is a non-core proceeding in which the Bankruptcy Judge may only submit proposed findings of fact and conclusions of law to the District Court.

2) Under 28 U.S.C. § 1334(c)(2), the within action could not have been commenced in a court of the United States absent jurisdiction under § 1334 and can be timely adjudicated in a State forum of appropriate jurisdiction and the appropriate court of bankruptcy should therefore abstain from any further proceedings herein.

## BANKRUPTCY COURT'S AUTHORITY TO CONDUCT A JURY TRIAL

If anything is clear in this area, it is that there is no right to a trial by jury in those matters traditionally heard by bankruptcy courts. *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). In this district, the district court has held that there is no right to a jury trial in bankruptcy court in an action seeking equitable relief. *See Pereira v. Checkmate Communications Company (In Re Checkmate Stereo and Electronics Ltd.)*, 21 B.R. 402 (E.D.N.Y.1982). Although not explicitly stated, it is apparent that this court based its decision on the historical test for determining whether a party has a right to a jury trial.

The Eleventh Circuit in *Pettigrew v. Graham (In Re Graham)*, 747 F.2d 1383 (11th Cir.1984) had occasion to consider whether the Seventh Amendment granted defendants a right to jury trial in a bankruptcy court action brought on by a trustee to set aside a fraudulent conveyance of realty. The court remarked that:

> Whether a party is entitled to a jury trial depends on whether the issue before the court is 'legal' or 'equitable'. To answer this question, a federal court must examine both the historical treatment of the issue and the nature of the remedies sought.... [T]he courts in this country have long held that an action by a creditor or a trustee-in-bankruptcy to set

---

**6.** An examination of the "Annual Report of the Director of the Administrative Office of the U.S. Courts" for the period ending June 30, 1986 indicates that median time interval from issue to trial in a civil case commenced in the Eastern District of New York was 22 months. (See Appendix 4). An official at the Office of Court Administration estimated that it would take approximately 11 months for a trial to be conducted in the Supreme Court of New York County. (See Appendix 5).

aside a fraudulent conveyance is an equitable action.... Although [the trustee] did not specifically request the court to set aside the conveyance, the trustee clearly anticipated such equitable relief ... [T]he Seventh Amendment did not grant appellants the right to a trial by jury. *Id.* at 1388–89.

The court also found that the defendant had no right to a jury trial under 28 U.S.C. § 1480(a). *Id.* 1388–89.

The First Circuit in *Whitlock v. Hause,* 694 F.2d 861 (1st Cir.1982) similarly held that an action seeking to set aside an alleged fraudulent conveyance was equitable in nature and therefore did not entitle the litigants to a jury trial. The court acknowledged that if a plaintiff combines into a single proceeding both a legal claim for damages and an equitable request that a court set aside a fraudulent conveyance, then the Seventh Amendment right to a jury trial would be preserved under *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) and *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). *Id.* at 863–66. But, since the action was purely equitable, the court held that there was no right to a jury trial in the bankruptcy court proceedings.

*See also Jefferson National Bank v. I.A. Durbin, Inc. and Betty Kail (In Re I.A. Durbin, Inc.),* 62 B.R. 139 (S.D.Fla.1986) (no constitutional or statutory right to a jury trial in a bankruptcy proceeding); *McLouth Steel Corporation v. Marblehead Lime Co. (In Re McLouth Steel Corporation),* 55 B.R. 357 (E.D.Mich.1985) (no constitutional nor statutory right to a jury trial in an action seeking the avoidance of preferential transfers); *Mansker v. Campbell (In Re Mansker),* 60 B.R. 803 (Bkrtcy. Mass.1986) (no constitutional right to a jury trial in a core proceeding); *In Re Barrios V. Ruiloba (In Re Ruiloba),* 58 B.R. 700 (Bkrtcy.S.D.Fla.1986) (no right to a jury trial in an action to determine the dischargeability of a debt); *Robinson v. Hinkley (In Re Hinkley),* 58 B.R. 339 (Bkrtcy.S.D.Tex.1986) (no right to jury trial on a counterclaim seeking the disallowance of a claim since such action was a summary proceeding under the old Act over which no jury trial right attached); *Atlas Fire Apparatus v. E.M. Beaver (In Re Atlas Fire Apparatus, Inc.),* 56 B.R. 927 (Bkrtcy.E.D. N.C.1986) (no right to a jury trial with respect to an action seeking a determination of the validity of a lien nor with respect to an action seeking the equitable subordination of a claim); *Nordberg v. Republic Nat'l Bank of Miami (In Re Chase & Sanborn Corp.),* 55 B.R. 538 (Bkrtcy. S.D.Fla.1985) (no right to a jury trial in a bankruptcy court in an action commenced by a trustee to avoid a fraudulent transfer at least where the relief was the forced reconveyance of the property rather than money damages); *Jacobs v. O'Bannon (In Re O'Bannon),* 49 B.R. 763 (Bkrtcy.M.D. La.1985) (there is no constitutional or statutory right to a jury trial in bankruptcy cases); *Turner v. Wlodarski (In Re Minton Group, Inc.),* 43 B.R. 705 (Bkrtcy.S.D. N.Y.1984) (no jury trial right in an action to set aside a fraudulent conveyance and preferences); *Hassett v. Weissman (In Re OPM Leasing Services, Inc.),* 35 B.R. 854 (Bkrtcy.S.D.N.Y.1983) (no right to a jury trial in an action seeking to set aside a fraudulent conveyance). *See also McLouth Steel Corp. v. Marblehead Lime (In Re McLouth Steel Corp.),* 55 B.R. 357 (E.D.Mich.1985); *Hauytin v. Grynberg,* 52 B.R. 657 (Bkrtcy.Colo.1985); *Bokum Resources Corp. v. Long Island Lighting Co. (In Re Bokum Resources Corp.),* 49 B.R. 854 (Bkrtcy.N.M.1985). However, this is somewhat different from the question whether a bankruptcy court is constitutionally and statutorily empowered to conduct a trial by jury.

Historically, Congress conferred upon the bankruptcy tribunals the power to conduct jury trials in certain narrowly defined situations. Under section 19 of the Bankruptcy Act of 1898 (11 U.S.C. § 42), the immediate predecessor to the present 1978 Bankruptcy Reform Act, persons against whom involuntary petitions had been filed were given the right to trial by jury on the question of insolvency (no longer an issue under the 1978 statute); and section 17 of

that Act specifically preserved an otherwise existing right to trial by jury with regard to an otherwise existing right to trial by jury with regard to a determination of the nature and extent of liabilities not affected by an order of discharge, although former Bankruptcy Rule 409(c) provided for the jury trial to be conducted by the District Court unless local rule provided otherwise.

The 1978 legislation in 28 U.S.C. § 1480 provided that:

(a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979.

(b) The bankruptcy court may order the issues arising under section 303 [entitlement to order of relief in involuntary cases] of title 11 to be tried without a jury.

The language of § 1480 has been "construed by some courts as requiring a determination as to whether or not a party was entitled to a jury trial in the proceeding if the issue had been presented on September 30, 1979. In turn that required an analysis by the court as to whether a proceeding being heard under the 1978 Act would have been one entitling the party to a jury trial under the 1898 Act." Norton & Lieb, *Jurisdiction and Procedure Under the 1984 Bankruptcy Amendments*, 1985 Annual Survey of Bankruptcy Law, 53, 163. Other courts interpret the statute to mean that the only inquiry necessary is to determine whether there is a constitutional right to a jury trial on that particular issue. These courts would only consider whether the particular controversy called for equitable or legal relief. If equitable relief is being sought, then no jury trial would be required.

*Marathon* contained language which indicated that the court believed that bankruptcy judges' authority to conduct jury trials were among the judicial powers which could not constitutionally be given to non-Article III judges; although it is far from clear whether this power alone in the absence of other judicial prerogatives which were removed by the '84 Amendments would by itself be sufficient to sustain the *Marathon* holding. 28 U.S.C. § 1411, enacted as part of the 1984 Amendments, states:

(a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim.

(b) The district court may order the issues arising under section 303 of title 11 to be tried without a jury.

The language of § 1411 is seemingly inconsistent with that of § 1480. However, while Congress did not formally repeal § 1480, at least one court has held that it was implicitly repealed. *Jacobs v. O'Bannon (In Re O'Bannon)*, 49 B.R. 763 (Bkrtcy.N.D.La.1985).

The Bankruptcy Rules adopted by Supreme Court order dated April 25, 1983 (post-*Marathon*) provide in Rule 9015 not only for trial by jury upon timely demand of issues so triable as of right, but also state that "notwithstanding the failure of a party to demand a jury when such a demand might have been made of right, the court on its own initiative may order a trial by jury of any or all issues." Not only did the Supreme Court adopt these Rules post-*Marathon*, but the post-*Marathon*, pre-BAFJA letter of transmittal dated August 9, 1982 from the Advisory Committee on Bankruptcy Rules which had drafted them, to the Committee on Rules of Practice and Procedure of The Judicial Conference of the United States, specifically stated "[t]he rules were drafted to accommodate any future amendments by Congress to the jurisdiction of the bankruptcy courts necessitated by *Northern Pipeline Construction Co. v. Marathon Pipeline Co. ...*" New bankruptcy rules, proposed but not yet adopted, do not contain such specific jury

authorization. It is important to note that Rule 9015 will in effect be repealed if the proposed new Bankruptcy Rules are adopted.

Some courts, while not explicitly stating that a bankruptcy judge is not empowered to conduct a jury trial, hold that in a non-core proceeding involving legal issues, it would be *impractical* to have a bankruptcy judge conduct a full scale jury trial that would be subject to *de novo* review in the district court. *See e.g. Macon Prestressed Concrete Co. v. Duke*, 46 B.R. 727, 730 (M.D.Ga.1985); *Mohawk Industries, Inc. v. Robinson Industries, Inc.*, 46 B.R. 464 (D.Mass.1985); *Reda Inc. v. Harris Trust & Savings Bank (In Re Reda Inc.)*, 60 B.R. 178 (Bkrtcy.N.D.Ill.1986); *Palmisano v. Briggs (In Re Northern Design Inc.)*, 53 B.R. 25 (Bkrtcy.Vt.1985); *Mauldin v. Peoples Bank of Indianola (In Re Mauldin)*, 52 B.R. 838 (Bkrtcy.N.D.Miss.1985); *Smith-Douglass Inc. v. Smith (In Re Smith-Douglass Inc.)*, 43 B.R. 616 (Bkrtcy. E.D.N.C.1984).

Other courts have held that since a bankruptcy judge is empowered to conduct a jury trial in a "related" proceeding, such a trial could proceed in the bankruptcy court despite its being subject to de novo review. *See e.g. Walsh v. Long Beach Honda (In Re Gaildeen Industries, Inc.)*, 59 B.R. 402 (N.D.Cal.1986); *George Woloch Company Inc. v. Longview Capital Plastic Pipe, Inc. (In Re George Woloch Co., Inc.)*, 49 B.R. 68 (E.D.Pa.1985); *Leird Church Furniture Mfg. Co. v. Union National Bank of Little Rock (In Re Leird Church Furniture Mfg. Co.)*, 61 B.R. 444 (Bkrtcy.E.D. Ark.1986); *Otte v. Monsanto Co. (In Re McCrary's Farm Supply Inc.)*, 57 B.R. 423 (Bkrtcy.E.D.Ark.1985); *Young v. Peter J. Saker, Inc. (In Re Paula Saker & Co., Inc.)*, 37 B.R. 802 (Bkrtcy.S.D.N.Y.1984); *Martin Baker Well Drilling Inc. v. Koulovatos (In Re Martin Baker Well Drilling, Inc.)*, 36 B.R. 154 (Bkrtcy.Me.1984); *Nashville City Bank & Trust Co. v. Armstrong (In Re River Transp. Co.)*, 35 B.R. 556 (Bkrtcy.M.D.Tenn.1983).

Others have held that a bankruptcy judge has no authority to conduct a jury trial. *Hoffman v. Brown (In Re Brown)*, 56 B.R. 487 (Bkrtcy.Md.1985) (a bankruptcy court does not have the authority to conduct jury trials); *Cameron v. Anderson (In Re American Energy, Inc.)*, 50 B.R. 175 (S.N.D.1985) (bankruptcy judge is not empowered to conduct a jury trial).

The Seventh Amendment provides only for the "preservation" of the right to trial by jury, i.e. an entitlement only where such right existed at common law or where it exists under state law. Since core proceedings cannot by definition involve common law or state law rights; and since related proceedings which involve common law or state law rights are subject to mandatory abstention, it is clear that there is no right to a trial by jury in the bankruptcy court as it is constituted post-BAFJA, and therefore pre-BAFJA precedents are still good.

To the extent that a proceeding in a bankruptcy court is a properly referred "related to" proceeding, either of two arguments can be made as to authority of the bankruptcy court to conduct a jury trial. First: absent statutory prohibition, there is no reason why the bankruptcy court may not conduct a jury trial. Second: absent statutory authority, there is no reason why the bankruptcy court may conduct a jury trial. For the reasons which follow, we prefer the former.

Since a "related to" proceeding may not be heard by the bankruptcy court in any instance without the consent of all of the parties to the proceeding, we consider only the power of the bankruptcy court to conduct a jury trial with the parties consent. Clearly, instead of litigating, the parties could consent to arbitration, 9 U.S.C. § 2 (1947), by one or by two or by six or by twelve arbitrators. If there is no constitutional impediment to consensual findings of fact by a non-judicial body, how can there be one with regard to a qausi or semi-judicial body. Moreover, since a jury trial by a bankruptcy court is predicated upon con-

sent of all parties, how could the constitutional impediment be raised?

The only way in which the problem could arise is where a jury demand is made subsequent to the claimed consent of the parties to the bankruptcy court's hearing of the issues. Any rule adopting a procedure whereby this could happen without providing for a withdrawal of consent upon an adversary's jury demand is neither the type of consent required by the statute nor such consent as will comply with the constitutional requirements enunciated by *Marathon*.

We believe, therefore, that given the consent required to enable the bankruptcy court to hear a "related to" case, such consent would extend to conducting a jury trial.

■■■ However, absent clear precedent or statutory authority for this conclusion, and in view of the lack of procedures or facilities for implementation of bankruptcy court jury trials, the District Court general order of reference should be amended so as to revoke the reference to the bankruptcy court in any case where a jury trial properly has been demanded.

■■■ Since this matter is not a core proceeding and cannot be heard in the bankruptcy court, and further, since abstention herein appears to be mandated, the issue of whether the bankruptcy judge is empowered to conduct a jury trial is moot. However, this court believes that the line of cases which hold that, regardless of whether the bankruptcy judge is constitutionally or statutorily empowered to conduct a jury trial, it would not be in the interest of judicial economy to permit a bankruptcy judge to conduct jury trials, is the proper conclusion in light of the confusion surrounding the bankruptcy judge's power to conduct jury trials. Therefore, it is recommended that the district court should withdraw its reference in any non-core proceeding in which a party has a right to a jury trial since " '[a] party entitled to a jury trial should receive one, not an advisory jury trial in which proposed findings are submitted to the district court.' " *Macon Prestressed Concrete Co. v. Duke*, 46 B.R. 727, 730 (M.D.Ga.1985) (quoting *Smith-Douglass, Inc. v. Smith (In Re Smith-Douglass, Inc.)*, 43 B.R. 616 (Bkrtcy.E.D.N.C.1984)).

For the foregoing reasons, this court recommends that:

1. The district court find that defendant's motion to withdraw reference under 28 U.S.C. § 157(d) should be granted.

2. The district court must abstain from hearing this adversary proceeding under 28 U.S.C. § 1334(c)(2).

IT IS SO ORDERED.

APPENDIX 1

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------,--------------------------X

ACOLYTE ELECTRIC CORPORATION,              ᵀndex No. MISC. 86-0329

                   Plaintiff,

     -against-                                  ORDER

THE CITY OF NEW YORK,

                   Defendant.

------------------------------------X
```

The motion of defendant, The City of New York, for an Order pursuant to 28 U.S.C. 157(d) withdrawing reference of this matter to the U.S. Bankruptcy Court for the Eastern District of New York pursuant to 28 U.S.C. 157(1) and further for an Order staying the adversary proceeding pending before these parties in the U.S. Bankruptcy Court for the Eastern District of New York having come on for a hearing on 21 July 1986 and the Court having heard argument of counsel and being fully advised, it is,

ORDERED, that plaintiff's motion is hereby granted to the extent that the issues presented by said motion are referred to the Honorable Marvin A. Holland, Bankruptcy Judge, for determination of the following:

(a) Is the instant action a core proceeding, to wit, one in which the Bankruptcy Judge may hear and enter final orders pursuant to 28 U.S.C. 157(b)(1) or in the aleternative is the proceeding a non-core proceeding, to wit, one in which under 28 U.S.C. 157(c)(1) the Bankruptcy Court shall submit proposed findings of facts and conclusions of law to the District Court?

(b) Under 28 U.S.C. 1334, is the within action one in which the Court must mandatorily abstain or is the matter one in which the Court may under its own discretion abstain?

(c) In the event discretionary abstention is applicable, will the Bankruptcy Court abstain from hearing the within proceeding, and it is further

ORDERED, that defendant's motion to stay the bankruptcy proceeding is hereby denied and that depositions and other discovery should proceed forthwith.

Dated: Brooklyn, New York
~~July~~ *aug. 8,* 1986

ENTER,

_____
HON. JACK B. WEINSTEIN
DISTRICT COURT JUDGE

APPENDIX 3

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

In the Matter

of                                                          ORDER

The Referral of Matters to the Bankruptcy
Judges

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WHEREAS 28 U.S.C. §157(a) provides that each district court may refer any or all cases under Title 11 and any or all proceedings arising under Title 11, or arising in or related to a case under Title 11, it is hereby

ORDERED that all such cases and proceedings are hereby referred to the Bankruptcy Judges for this District, and it is further

ORDERED that this Order shall be given effect nunc pro tunc as of July 10, 1984, and that the prior Orders of this Court dated July 12, 1984, and August 7, 1984, relating to such referral of cases and proceedings are hereby rescinded.

FOR THE COURT:

Jack B. Weinstein, Chief Judge
United States District Court

DATED:   Brooklyn, New York
August 2 8 1986

# APPENDIX 4

TABLE C 10. U.S. DISTRICT COURTS
TIME INTERVALS FROM ISSUE TO TRIAL OF CIVIL CASES IN WHICH A TRIAL WAS COMPLETED, BY DISTRICT
DURING THE TWELVE MONTH PERIOD ENDED JUNE 30, 1986

| CIRCUIT AND DISTRICT | TOTAL TRIALS | | | | NONJURY TRIALS | | | | JURY TRIALS | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | NUMBER OF TRIALS | 10 PER-CENT LESS THAN | ME-DIAN | 10 PER-CENT MORE THAN | NUMBER OF TRIALS | 10 PER-CENT LESS THAN | ME-DIAN | 10 PER-CENT MORE THAN | NUMBER OF TRIALS | 10 PER-CENT LESS THAN | ME-DIAN | 10 PER-CENT MORE THAN |
| TOTAL... | 9,571 | 4 | 14 | 36 | 4,563 | 3 | 14 | 36 | 5,008 | 5 | 14 | 35 |
| DC...... | 162 | 4 | 11 | 31 | 90 | 4 | 11 | 37 | 72 | 4 | 10 | 28 |
| 1ST... | 405 | 7 | 19 | 52 | 135 | 4 | 15 | 54 | 270 | 8 | 22 | 51 |
| ME...... | 35 | 5 | 16 | 31 | 6 | - | - | - | 29 | 5 | 16 | 25 |
| MA...... | 214 | 10 | 27 | 61 | 56 | 4 | 20 | 64 | 158 | 11 | 29 | 60 |
| NH...... | 32 | 15 | 31 | 48 | 11 | 15 | 31 | 54 | 21 | 15 | 33 | 41 |
| RI...... | 73 | 6 | 10 | 20 | 24 | 7 | 10 | 20 | 49 | 6 | 11 | 19 |
| PR...... | 51 | 2 | 10 | 25 | 38 | 2 | 9 | 23 | 13 | 1 | 22 | 29 |
| 2ND... | 931 | 3 | 19 | 42 | 447 | 1 | 16 | 42 | 484 | 7 | 20 | 42 |
| CT...... | 180 | 1 | 20 | 55 | 75 | 1 | 16 | 55 | 105 | 5 | 23 | 51 |
| NY,N.... | 65 | 7 | 24 | 42 | 21 | 1 | 28 | 44 | 44 | 11 | 24 | 36 |
| NY,E.... | 169 | 6 | 22 | 43 | 89 | 2 | 22 | 44 | 80 | 9 | 23 | 39 |
| NY,S.... | 431 | 3 | 16 | 37 | 221 | 2 | 16 | 37 | 210 | 5 | 17 | 36 |
| NY,W.... | 40 | 1 | 14 | 59 | 26 | 1 | 3 | 35 | 14 | 11 | 23 | 59 |
| VT...... | 44 | 10 | 17 | 33 | 15 | 1 | 16 | 33 | 31 | 11 | 18 | 33 |
| 3RD... | 801 | 4 | 13 | 35 | 317 | 3 | 14 | 40 | 484 | 4 | 12 | 33 |
| DE...... | 20 | 1 | 12 | 45 | 10 | 6 | 12 | 45 | 10 | 1 | 10 | 19 |
| NJ...... | 125 | 5 | 21 | 43 | 65 | 5 | 20 | 49 | 60 | 5 | 23 | 36 |
| PA,E.... | 432 | 4 | 10 | 30 | 144 | 3 | 10 | 32 | 288 | 4 | 10 | 29 |
| PA,M.... | 66 | 1 | 10 | 24 | 28 | 1 | 11 | 29 | 38 | 1 | 9 | 21 |
| PA,W.... | 110 | 7 | 17 | 37 | 55 | 5 | 17 | 37 | 55 | 8 | 17 | 37 |
| VI...... | 48 | 8 | 19 | 51 | 15 | 2 | 16 | 62 | 33 | 11 | 22 | 47 |
| 4TH... | 858 | 3 | 9 | 24 | 383 | 2 | 7 | 22 | 475 | 3 | 10 | 26 |
| MD...... | 123 | 2 | 13 | 41 | 64 | 1 | 10 | 27 | 59 | 6 | 16 | 45 |
| NC,E.... | 25 | 8 | 12 | 27 | 12 | 8 | 11 | 26 | 13 | 1 | 13 | 28 |
| NC,M.... | 44 | 11 | 19 | 30 | 23 | 8 | 18 | 25 | 21 | 11 | 21 | 36 |
| NC,W.... | 84 | 5 | 12 | 18 | 32 | 5 | 12 | 18 | 52 | 4 | 11 | 18 |
| SC...... | 156 | 3 | 8 | 22 | 43 | 4 | 10 | 28 | 113 | 2 | 8 | 17 |
| VA,E.... | 254 | 2 | 5 | 9 | 145 | 2 | 5 | 9 | 109 | 2 | 5 | 9 |
| VA,W.... | 85 | 4 | 12 | 33 | 40 | 2 | 12 | 41 | 45 | 4 | 12 | 27 |
| WV,N.... | 24 | 4 | 16 | 39 | 6 | - | - | - | 18 | 6 | 17 | 37 |
| WV,S.... | 63 | 1 | 12 | 25 | 18 | 1 | 12 | 20 | 45 | 3 | 12 | 29 |
| 5TH... | 1,475 | 3 | 15 | 32 | 753 | 4 | 16 | 33 | 722 | 3 | 14 | 32 |
| LA,E.... | 386 | 6 | 13 | 29 | 182 | 5 | 13 | 30 | 204 | 6 | 13 | 29 |
| LA,M.... | 39 | 1 | 23 | 51 | 30 | 1 | 23 | 51 | 9 | - | - | - |
| LA,W.... | 167 | 4 | 16 | 32 | 99 | 4 | 17 | 30 | 68 | 3 | 14 | 32 |
| MS,N.... | 64 | 8 | 21 | 37 | 37 | 10 | 22 | 36 | 27 | 8 | 21 | 34 |
| MS,S.... | 103 | 6 | 16 | 27 | 58 | 4 | 16 | 27 | 45 | 6 | 15 | 35 |
| TX,N.... | 205 | 3 | 17 | 36 | 104 | 4 | 16 | 37 | 101 | 2 | 18 | 35 |
| TX,E.... | 166 | 1 | 10 | 25 | 53 | 1 | 14 | 25 | 113 | 1 | 8 | 25 |
| TX,S.... | 204 | 4 | 21 | 42 | 121 | 2 | 20 | 40 | 83 | 7 | 24 | 43 |
| TX,W.... | 141 | 4 | 13 | 24 | 69 | 3 | 14 | 25 | 72 | 4 | 11 | 23 |
| 6TH... | 921 | 4 | 17 | 39 | 397 | 3 | 14 | 38 | 524 | 6 | 18 | 39 |
| KY,E.... | 57 | 10 | 21 | 48 | 16 | 10 | 33 | 53 | 41 | 10 | 20 | 38 |
| KY,W.... | 58 | 5 | 18 | 35 | 30 | 12 | 21 | 43 | 28 | 3 | 15 | 28 |
| MI,E.... | 295 | 10 | 19 | 38 | 98 | 9 | 18 | 38 | 197 | 11 | 20 | 37 |
| MI,W.... | 59 | 2 | 19 | 34 | 26 | 3 | 20 | 32 | 33 | 1 | 18 | 38 |
| OH,N.... | 138 | 1 | 12 | 43 | 62 | 1 | 10 | 30 | 76 | 1 | 16 | 43 |
| OH,S.... | 81 | 8 | 16 | 44 | 35 | 5 | 13 | 42 | 46 | 10 | 20 | 51 |
| TN,E.... | 102 | 1 | 8 | 19 | 50 | 1 | 7 | 14 | 52 | 4 | 9 | 21 |
| TN,M.... | 70 | 3 | 12 | 31 | 35 | 3 | 9 | 32 | 35 | 6 | 18 | 31 |
| TN,W.... | 61 | 1 | 21 | 49 | 45 | 1 | 19 | 40 | 16 | 15 | 34 | 62 |

**188**

## APPENDIX 5

*U.S. Bankruptcy Court*
*Eastern District of New York*
*75 Clinton Street*
*Brooklyn, New York 11201*

*Chambers of*
Hon. Marvin A. Holland
U.S. Bankruptcy Judge

(718) 330-2188
FTS 656-2188

*October 20, 1986*

```
Knute Rondum
Office of Court Administration
80 Centre Street
New York, New York 10010
```

Dear Mr. Rondum:

I would like to know the median time it takes for a civil proceeding in the Supreme Court of New York County (including both jury and non-jury trials) to be completed, from the time of its commencement until adjudication.

Please feel free to respond to this on the bottom of this letter.

Very truly yours,

MARVIN A. HOLLAND
Bankruptcy Judge

By _____
Joel Shafferman
Law Clerk

10/20/86

Using the terminology of "supply" of Trial Notes of Issue filed and through disposition, in New York County, the estimate would be about 11 terms (a term is of 4 weeks duration).

[signature] Knute Rondum
Man. Analyst